Willie A. CANNON, d/b/a W. A. Cannon Liquors, Plaintiff-Appellant,

v.

TEAMSTERS & CHAUFFEURS UNION, LOCAL 627, an unincorporated labor association, et al., Defendants-Appellees.

No. 80–1103.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 23, 1980.

Decided Aug. 21, 1981.

Rehearing and Rehearing En Banc Denied Oct. 2, 1981.

Richard D. Price, Peoria, Ill., for plaintiff-appellant.

Gerry M. Miller, Milwaukee, Wis., Richard E. Quinn, Peoria, Ill., for defendants-appellees.

Before SWYGERT, Senior Circuit Judge, and PELL and CUDAHY, Circuit Judges.

CUDAHY, Circuit Judge.

Willie A. Cannon, doing business as W. A. Cannon Liquors ("Cannon"), brought this action against defendants Teamsters & Chauffeurs Union, Local 627 ("the Union"),[1] and several beer and liquor distributors,[2] alleging that defendants' December 1970 agreement to restrict the hours of delivery of beer and liquor to certain liquor retailers

---

1. Walter Gleason and Robert Barker, officials of the Union, were also named as defendants.

2. The distributors named as defendants were Pabst Brewing Company, Baumgarten Distrib- uting Company, Brewers Distributing Company, Mid-West Sales Company, Quality House, and Standard Wine & Liquor Company.

violated various federal civil rights[3] and antitrust statutes.[4] The district court granted summary judgment in favor of defendants on the antitrust claim and granted all defendants' motions for directed verdicts at the close of plaintiff's evidence on the civil rights claim. We affirm.

### I.

Local 627 represents the truck drivers who make deliveries for the defendant distributors to plaintiff and other liquor retailers in the area of Peoria, Illinois. In late 1970, after two Local 627 drivers were badly beaten in separate incidents while making liquor deliveries in a certain area of Peoria, the Union held several meetings to develop a plan to minimize the problem of such assaults. Several alternatives, including the use of two drivers per truck, the installation of safes on the trucks or credit-only transactions, were proposed by the drivers.

At a meeting held on December 1, 1970, the Union presented these proposals to the distributors. After rejecting several of the proposals as too costly or otherwise infeasible, the distributors and the Union finally agreed on a plan to restrict the times of deliveries to liquor retailers located in the area of Peoria where the incidents had taken place. Under the agreed-upon restricted delivery schedule, 15 liquor retailers, including Cannon, would not receive deliveries at all on Friday or after noon on Monday through Thursday.[5] This agreement became effective on December 1, 1970, and remained in effect at least through the time of trial.

In his complaint filed October 31, 1978, plaintiff alleged that the defendants agreed on the restricted delivery schedule because

of their "determination that Negro businessmen such as plaintiff operating in Negro neighborhoods with Negro clientele somehow constitute a less desirable and more hazardous class than White businessmen similarly situated." The complaint was subsequently amended to allege that the restricted delivery agreement also violated the federal antitrust laws.

The district court granted the defendants' motions for summary judgment on the antitrust claim without opinion on June 29, 1979 and July 10, 1979. A jury trial was held on plaintiff's civil rights claim. On January 15, 1980 and January 16, 1980, after the close of plaintiff's case, the district court granted defendants' motions for directed verdicts.

### II.

■ Plaintiff urges that the evidence in the record, together with the inferences reasonably drawn therefrom, establishes a prima facie case of racial discrimination. It is, of course, well settled that

[a] mere scintilla of evidence is not enough to require submission of an issue to the jury. The decisions establish a more reasonable rule 'that in every case, before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus of proof* is imposed.'

*Hohmann v. Packard Instrument Co.*, 471 F.2d 815, 819 (7th Cir. 1973) (quoting *Gunning v. Cooley*, 281 U.S. 90, 94, 50 S.Ct. 231, 233, 74 L.Ed. 720 (1930)).

As plaintiff recognizes, the question on review of a directed verdict is whether,

---

**3.** 42 U.S.C. §§ 1981, 1982 and 1985(3) (1976).

**4.** 15 U.S.C. § 1 *et seq.* (1976).

**5.** Defendant Walter Gleason testified that afternoon deliveries were restricted because there were fewer "troublemakers . . . up and about" in the morning and because the drivers had more money on their persons in the afternoons. He also testified that Friday deliveries were eliminated because the incidents that precipi-

tated the agreement had occurred on Friday and because third-shift workers who finished their week's work at 7:00 a.m. on Fridays were perceived as a threat to the drivers.

Plaintiff testified that he was able to purchase and pick up beer and liquor supplies from the defendant distributors on Fridays (presumably at some additional cost to himself).

viewing the evidence and reasonable inferences therefrom in the light most favorable to the plaintiffs, "a prima facie case has been presented against any of the defendants." *Hampton v. Hanrahan*, 600 F.2d 600, 608 (7th Cir. 1979), *rev'd in part on other grounds*, 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980).

We believe the evidence is insufficient to create a jury question whether defendants discriminated against Cannon because of his race. The record amply demonstrates that the restricted delivery schedule was adopted in response to legitimate concerns about driver safety. Moreover, defendants' agreement restricted delivery times to both black and white liquor retailers.

In his brief, plaintiff lists several "facts" which he argues are sufficient to make out a prima facie case of discrimination against Cannon. He first argues that a discriminatory motivation for the agreement can be inferred from the fact that only 15 of the 26 establishments initially listed by the beer drivers as potentially dangerous were finally placed on the restricted list. However, since no evidence was introduced to establish whether these 26 establishments were owned by white or black businessmen, no racial inference can be drawn from the fact that only 15 were finally placed on the restricted list. Moreover, plaintiff testified at trial that of the 15 establishments finally placed on the restricted list, at least five were owned by white licensees.[6]

The second piece of evidence to which plaintiff refers is a notation found in a union official's written minutes of one of the meetings held at the Union hall in 1970 to discuss driver safety. This notation reads: "240 licensees—15 approx. Black". Plaintiff alleges that the "15 approx. Black" notation relates in some way to the 15 establishments ultimately placed on the restricted list. The only testimony concerning this question came from defendant Wal-

ter Gleason, an official of the Union, who testified that the figures were merely coincidental. Moreover, since at least 5 of the licensees on the restricted list were white, it would be unreasonable to infer any relationship between the notation and the establishments on the restricted list.

Plaintiff next urges that a "cover-up" can be inferred from the failure of the defendants to include the restricted delivery agreement in their collective bargaining agreement. This argument is without merit since all fifteen establishments on the restricted list received copies of a letter on the Union's stationery that informed them of the restricted delivery policy.

Plaintiff also suggests that a racial animus can be inferred from the fact that officers and employees of several defendants described the area in which restricted deliveries were made as a "black area" during various conversations with plaintiff and two other black licensees on the restricted list. It cannot reasonably be inferred from this evidence that defendants discriminated against plaintiff because he was black, however, since at least 5 white licensees in the same area were also placed on the restricted list. At most, this evidence suggests that certain of defendants' officers and employees perceived the area where Cannon is located to be a "black area." Moreover, since these statements were made well after the December 1, 1970 restricted delivery agreement was entered into, they are of negligible value in determining whether that agreement was the result of a racially discriminatory animus.

Plaintiff also argues that because defendant Standard Wine stated in answers to interrogatories that the 15 licensees on the list "are not dangerous," a racial motivation can be inferred. Properly read, however, this answer suggests only that Standard Wine did not consider the various establish-

---

6. Although we need not so decide, the fact that at least 5 of the 15 licensees on the restricted list were white may be enough in itself to defeat the contention that defendants were motivated by a racially discriminatory animus. *See Potenza v. Schoessling*, 541 F.2d 670, 672 (7th Cir. 1976) (in claim under 42 U.S.C. § 1985(c) (1976), plaintiffs' "amended complaint reveals no [class-based animus against persons with criminal records] because it shows there are persons with criminal records still employed [by the defendants]").

ments themselves to be a threat to its drivers. So interpreted, this answer is consistent with the testimony of Standard Wine's sales manager at trial that it was not the entities themselves but the areas in which the entities were located that were dangerous at certain times.

Plaintiff also suggests that a racial motivation underlying the agreement can be inferred from the fact that a certain white liquor store in a white area, thought to be dangerous by defendant Gleason, was not on the restricted delivery list. However, because the only incident in over thirty years involving a driver at this establishment occurred in 1978, this evidence is insufficient to establish a racial animus underlying the 1970 agreement.

Plaintiff finally urges that a racial motivation can be inferred from the fact that a white-owned liquor store (Yakoff's) located in the same area as plaintiff's store was not placed on the restricted list. Defendant Gleason testified, however, that Yakoff's was not viewed by the drivers as a potentially hazardous place because the owner provided them with a "physical escort plus protection" to and from his building. Moreover, as noted above, at least five of the licensees on the restricted list were white.[7]

Viewed in the light most favorable to the plaintiff, we believe these facts do not constitute substantial evidence tending to show that the restricted delivery agreement was motivated by defendant's desire to discriminate against Cannon because of his race. The district court therefore properly directed a verdict against plaintiff on his civil rights claim.

At oral argument before this court, plaintiff's counsel challenged the propriety of the district court's ruling preventing the introduction of evidence concerning the racial composition of the *Clienteles* of the establishments on the restricted delivery list. Since this issue was not argued in plaintiff's brief on appeal, however, it is not properly before us, and we therefore decline to consider it. As this court stated in *United States v. White*, 454 F.2d 435, 439 (7th Cir. 1971), *cert. denied*, 406 U.S. 962, 92 S.Ct. 2070, 32 L.Ed.2d 350 (1972) (citations omitted):

> Rule 28 of the Federal Rules of Appellate Procedure has been interpreted to require that all issues be set out in the appellant's brief and the respondent's answer, and failure to comply may constitute a waiver. This rule is particularly applicable in this case where we have not been presented with sufficient information or argument to allow an intelligent disposition of this issue and for this reason, we treat the issue as having been waived.

*See also* 9 Moore's Federal Practice ¶ 228.-02[2.–1] (2d ed. 1980). Rule 28 provides that the appellant's brief shall contain, *inter alia*, a statement of issues presented for review and an argument, which, in turn, "shall contain the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities, statutes and parts of the record relied on." Fed.R.App.P. 28(a)(4). The only issue presented and argued in Cannon's brief is whether, "viewing the evidence and all reasonable inferences therefrom in the light most favorable to plaintiff, a prima facie case of racial discrimination has been established." Appellant's brief at 6–7.[8] Because plaintiff did not

---

**7.** Plaintiff also asserts that all 15 establishments on the restricted list "whether or not their legal owners were white were viewed in the community as black bars, taverns or package liquor stores." Whatever its significance, this assertion is without any support in the record. *See also* note 9, *infra*.

**8.** The single statement in plaintiff's brief concerning the district court's evidentiary ruling is found in a one paragraph section entitled "Introduction," which reads:

> Plaintiff is a black businessman who serves a black clientel [sic] in a black neighborhood in Peoria, Illinois. By this action he alleged that the *admitted* agreement entered into by all Defendants whereby he cannot receive deliveries of wholesale beer, wine and liquor goods after twelve o'clock noon Monday through Thursday and *not at all on Fridays* was due in substantial part to the color of his skin and the color of the skin of his customers. After foreclosing all proof at a three day jury trial as to the color of the skin of the

present or argue in his brief any issue concerning the propriety of the district court's exclusionary ruling, the defendants were not expected to, and did not, present any argument, citation to authorities, or factual references concerning that ruling. It therefore would be patently unfair to the defendants for this court to consider this issue as properly before it.[9]

## III.

■ In Count III of his amended complaint, plaintiff alleges that the restricted delivery agreement violated the proscriptions of the Sherman Act, 15 U.S.C. § 1 *et seq.* (1976). Because the agreement concerned the conditions of the drivers' employment, however, it is exempted from scrutiny under the antitrust laws. *Local 189, Amalgamated Meat Cutters & Butcher Workmen of North America v. Jewel Tea Co.*, 381 U.S. 676, 85 S.Ct. 1596, 14 L.Ed.2d 640 (1965). The district court therefore properly granted summary judgment in favor of all defendants on Count III of plaintiff's complaint.

## IV.

For the foregoing reasons, the judgments appealed from are affirmed.

customers of Plaintiff and of the clientel [sic] of other businessmen similarly situated, (T 254) the Honorable Robert D. Morgan directed a verdict in favor of all Defendants at the close of Plaintiff's case.

This summary reference does not satisfy the requirements of Rule 28.

9. Defendants might have raised several arguments in response to a claim that the district court should have admitted evidence concerning the racial composition of the clienteles of the fifteen establishments on the restricted list. They could have argued, for example, that such evidence would have been irrelevant. Plaintiff's complaint alleges that black businessmen with black clienteles in black neighborhoods were treated differently than "white businessmen similarly situated" (e. g., in black neighborhoods with black clienteles). But in response to the district court's exclusionary ruling, the plaintiff offered to prove only that all of the 15 establishments on the restricted list were frequented primarily by black patrons. Even assuming this to be true, such evidence would not tend to establish that plaintiff was treated differently than white owners of estab-

lishments with predominantly black clienteles. Indeed, plaintiff testified that five of the businessmen on the restricted list were white.

If plaintiff's complaint were read more broadly to suggest that plaintiff was basing his action entirely on discrimination against his clientele, then defendants might have raised various issues concerning plaintiff's standing to bring such an action, and the proper scope of 42 U.S.C. § 1985(3) (1976) in such circumstances. Moreover, plaintiff's offer of proof is arguably insufficient in this respect, since plaintiff offered to prove only that the 15 establishments on the restricted list had predominantly black clienteles and not that predominantly white clientele establishments with substantial security problems were treated differently than predominantly black clientele establishments with similar security problems. Of course, we intimate no opinion on the merits of these issues. We also express no opinion whether it was negligent for plaintiff's counsel to fail to argue the merits of the district court's exclusionary ruling in his brief.