*1070
 
 GARWOOD, Circuit Judge:
 

 Appellant, Guadalupe Savings & Loan Association (“Guadalupe”), appeals the district court’s order requiring it to turn over three certificates of deposit to appellee, Texas Mortgage Services Corporation (“TMSC”), a debtor in possession under Chapter 11. TMSC initiated these proceedings in the bankruptcy court against Guadalupe for the turn over of the funds.
 
 [1]
 
 The district court, Judge Buchmeyer, after reviewing the bankruptcy court’s findings of fact and conclusions of law,
 
 [2]
 
 issued the turn-over order on June 23, 1983. We sustain the district court’s turn-over order, holding that Guadalupe is estopped from denying the enforceability of its promise to maintain certain deposits as trust funds.
 

 FACTUAL AND PROCEDURAL BACKGROUND
 

 TMSC, a mortgage broker, originates residential mortgage loans for subsequent sale to investors.
 
 [3]
 
 In order to obtain funding for its loans, TMSC executed a Warehousing Agreement with Guadalupe on November 25, 1981. Under the terms of this agreement, Guadalupe was to serve as a source of interim financing for mortgage loans originated by TMSC until TMSC could sell those loans to permanent lenders.
 
 [4]
 
 As consideration for this line of credit, TMSC executed promissory notes to
 
 *1071
 
 Guadalupe, which were secured in part by the assignment of a reserve account TMSC was to establish with appellant. TMSC was supposed to make deposits of approximately $137,000 in the reserve account concurrently with appellant’s advances of funds. TMSC commenced borrowing from Guadalupe on November 25, 1981, as provided in the Warehousing Agreement.
 
 [5]
 
 TMSC was experiencing financial difficulty, however, and failed to make any deposits in the reserve account. TMSC’s financial status failed to improve over time. On July 1, 1982, TMSC’s creditors instituted Chapter 11 proceedings against it by filing an involuntary petition in bankruptcy court, pursuant to 11 U.S.C. § 303 (1979).
 

 Later that month, on July 24, 1982, TMSC wire transferred a deposit of $300,-000 to Guadalupe.
 
 [6]
 
 Upon receipt of the deposit, Guadalupe issued three $100,000 certificates of deposit to TMSC with maturity dates of approximately thirty days. These certificates were styled, “Texas Mortgage Services Corporation Trust Account # 1,” “# 2,” and “# 3,” respectively. The parties, however, sharply dispute the purpose and nature of the deposit. Guadalupe argues that the funds constituted a
 
 general
 
 deposit, and that they were labeled as trust accounts solely for purposes of FSLIC deposit insurance coverage. TMSC transferred the funds as a general deposit, Guadalupe argues, to comply with its Warehousing Agreement obligation to maintain a reserve account with Guadalupe. TMSC, however, argues that the $300,000 were trust accounts composed of loan payments TMSC had collected as servicing agent for its investors. TMSC argues that the funds were the property of the permanent lenders rather than of TMSC, and were held by TMSC only in trust. TMSC explained that the purpose of the deposit was to enable Guadalupe to benefit from the
 
 interest
 
 generated by the deposit, thereby alleviating a portion of TMSC’s admittedly outstanding reserve account obligation.
 

 Subsequently, on November 1, 1982, an order for relief was entered in TMSC’s bankruptcy proceedings. A week later, on November 8, 1982, Guadalupe setoff $107,-737.36 of the $300,000 deposit, which was the amount appellant believed it was owed in delinquent warehousing, commitment, and extension fees. In response to Guadalupe’s setoff, TMSC sent a letter to appellant, dated December 14, 1982, demanding that Guadalupe immediately return the full deposit. Guadalupe refused. TMSC then, on December 10, 1982, filed a complaint for the turn over of the deposit in bankruptcy court as a “related action” to its Chapter 11 proceedings. In its answer to TMSC’s complaint, Guadalupe asserted a right to setoff, pursuant to 11 U.S.C. § 553 (1979), and filed a counterclaim requesting relief from the automatic stay imposed by TMSC’s bankruptcy proceedings under 11 U.S.C. § 362 (1979).
 

 The bankruptcy court, Judge Gandy, held a hearing on TMSC’s claim for the turn over on January 21, 1983. The court noted that there was sharp conflict between the testimony offered by both parties. As set out in greater detail below, Thomas Andrews, the President of TMSC, and Reba Lee, Executive Vice President for the company, testified that they explained to Guadalupe on numerous occasions
 
 prior
 
 to the transfer that the funds belonged to permanent lenders rather than to appellee. Andrews testified that he informed James Lammers, the President of Guadalupe, that the interest from the funds, not the trust funds themselves, could be applied to the reserve account. Andrews further testified that he called Lammers after the transfer, in August 1982, to again clarify that the funds constituted a trust account.
 
 *1072
 
 He also stated that written agreements between TMSC and the permanent investors required TMSC to hold any loan payments it collected on their behalf in segregated trust accounts. In response to Guadalupe’s contention that the “Trust Account” label is as consistent with a general deposit as with a genuine trust account, Andrews testified that the parties would have arranged for the accounts to be styled “TMSC, Trustee for [specific investors],” except that the investors were too numerous to list.
 

 Guadalupe presented almost opposite testimony. Maxine Short, Assistant Vice President for Guadalupe, testified that TMSC had never indicated one way or the other whether the money constituted trust funds. She later testified that TMSC had claimed to be the owner of the funds prior to the wire transfer, and had not indicated that the funds might in fact belong to permanent lenders. Short also testified that the parties agreed to label the account a “trust” at
 
 her
 
 suggestion, and solely for purposes of satisfying FSLIC insurance regulations. James Lammers testified that TMSC never indicated that the $300,000 constituted trust funds until August 1982, after the transfer already had occurred. In fact, he testified that TMSC’s President, Thomas Andrews, earlier had told him that TMSC could
 
 not
 
 deposit trust funds because then it would be obligated to pay any resulting interest to the trust beneficiaries. Lammers testified several times that it was Guadalupe’s belief all along that TMSC made the deposit in satisfaction of its obligation to maintain a reserve account, and that he would not have accepted the deposit had he known they were escrow funds. During cross-examination, however, Lam-mers admitted that the $300,000 was “more than would have been required under the Reserve Agreement.”
 

 The bankruptcy court, Judge Gandy, ruled in favor of TMSC on April 17, 1983, and issued a proposed order to turn over the certificates of deposit. In its Findings of Fact, the bankruptcy court found that TMSC had advised Guadalupe prior to the transfer that the funds were trust funds, but that the interest from the certificates of deposit could be used to mitigate TMSC’s debt. The court found that Guadalupe consequently issued three certificates of deposit to TMSC, which totaled $300,000. The court also found that TMSC had again advised Guadalupe of the trust nature of the funds in August 1982, prior to Guadalupe’s setoff. The court concluded that the $300,000 constituted trust funds, that the funds “did not belong to TMSC,” and that Guadalupe had “wrongfully refused” to return the deposit to TMSC. The bankruptcy court concluded that TMSC was “entitled to an order of the Court directing Guadalupe to turn over said funds represented by said Certificates of Deposit, less all accrued interest which is to remain as a reserve fund.” The ruling rendered appellant’s counterclaim moot. The district court, Judge Buchmeyer, reviewed the bankruptcy court’s Findings of Fact and Conclusions of Law and its proposed turn-over order, and entered the turn-over order on June 23, 1983, directing Guadalupe to return the three certificates of deposit or their equivalent to TMSC.
 

 Guadalupe subsequently filed a Motion for Hearing for Reconsideration of [the Turn-over] Order in bankruptcy court on July 28, 1983. The motion was transferred to the district court for review. Appellant argued that the district court failed to hold a
 
 de novo
 
 hearing on the bankruptcy court’s Findings of Fact and Conclusions of Law prior to executing the turn-over order. Moreover, Guadalupe argued that the transcript of the proceedings in bankruptcy court had not been before the district court when it issued its turn-over order. Guadalupe argued that the district court’s failure to hold a
 
 de novo
 
 hearing violated the local rules of the Northern District of Texas.
 
 [7]
 
 A hearing was held on Guadalupe’s motion
 
 *1073
 
 on August 1, 1983.
 
 [8]
 
 On September 6,1983, the district court, Judge Buchmeyer, and the bankruptcy court, Judge Roberts, issued a joint order transferring the appeal to this Court.
 
 [9]
 

 On appeal, Guadalupe argues that the district court erred by failing to conduct a
 
 de novo
 
 hearing on the disputed issues of fact. Therefore, Guadalupe argues that it is entitled to a
 
 de novo
 
 review by this Court of the bankruptcy court’s fact-findings. Guadalupe also contends that the three certificates of deposit cannot constitute trust funds as a matter of law, and that it consequently has a right to setoff the deposit. Having reviewed these arguments, we conclude that appellant has waived the issue whether the district court should have conducted a
 
 de novo
 
 hearing and affirm the district court’s turn-over order on the ground of estoppel.
 
 [10]
 

 STANDARD OF REVIEW FOR FINDINGS OF FACT
 

 At oral argument, appellant’s counsel argued that this Court should conduct a
 
 de novo
 
 review of the bankruptcy court’s findings of fact. Without reaching the merits of appellant’s argument, we find that this issue has been waived. Federal Rule of Appellate Procedure 28(a) provides:
 

 “The brief of the appellant shall contain under appropriate headings and in the order here indicated:
 

 “(4) An argument. The argument may be preceded by a summary. The argument
 
 shall
 
 contain the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities, statutes and parts of the record relied on.” (Emphasis added).
 

 Rule 28(a)(4) has been construed as a mandate that the brief of the appellant contain a statement of the issues presented for review, and an argument portion which analyzes and supports those contentions. 16 C. Wright, A. Miller, E. Cooper & E. Gressman,
 
 Federal Practice and Procedure
 
 § 3974, at 421 (1977). As a consequence, it has been stated that issues “not raised or argued
 
 in the brief oí
 
 the appellant may be considered waived and thus will not be noticed or entertained by the court of appeals.”
 
 Id.
 
 at 421 n. 1 (emphasis added). We have applied such a waiver in a number of cases.
 
 See Smith v. State Farm Fire & Casualty Co.,
 
 695 F.2d 202, 206 (5th Cir.1983);
 
 Gaines v. Cuna Mut. Ins. Soc’y,
 
 681 F.2d 982, 985 n. 3 (5th Cir.1982);
 
 In re Mun. Bond Reporting Antitrust Litig.,
 
 672 F.2d 436, 439 n. 6 (5th Cir.1982);
 
 see also Cannon v. Teamsters & Chauffeurs Union,
 
 657 F.2d 173, 177-78 (7th Cir.1981) (issue raised by appellant at oral argument had been waived because appellant failed
 
 *1074
 
 to argue the issue in its brief); 16 C. Wright, A. Miller, E. Cooper & E. Gress-man,
 
 supra,
 
 § 3974, at 421 (stating that “issues that are not raised in appellant’s initial brief at this point will normally not be considered by the [appellate] court,” and citing several cases by this Court in support of that proposition).
 

 Guadalupe failed to raise or argue the issue whether it is entitled to a
 
 de novo
 
 review in either of its briefs or in its “Appellant’s Amended Designation of Contents for Inclusion in Record and Statement of Issues on Appeal,” in which it provided notice to TMSC of the arguments it planned to raise on appeal.
 
 See Cannon,
 
 657 F.2d at 178 (it would be “patently unfair” for the court to consider the new issue as properly before it since the other side had not been given advance warning that the issue would be raised). Guadalupe chose to challenge the bankruptcy judge’s findings of fact under a “sufficient evidence” standard of review in its briefs to this Court rather than under a
 
 de novo
 
 standard. An appellate court is most ill-suited to conduct any such
 
 de novo
 
 review as belatedly requested by Guadalupe. Because the
 
 de novo
 
 issue has not been timely and properly raised on appeal to this Court, and no good reason appears why the normal waiver rule should not apply, we decline to consider that issue.
 

 ESTOPPEL
 

 Appellant contends that even under the facts as found by the bankruptcy court, the three certificates of deposit cannot constitute trust funds as a matter of law. We affirm the district court’s order under the doctrine of estoppel.
 

 Assuming that federal law governs post-petition setoff, we nevertheless direct “ ‘an interested eye’ ” toward the decisions of the forum state.
 
 In re Goodson Steel Corp.,
 
 488 F.2d 776, 779 (5th Cir.1974) (quoting
 
 In re A.M. Townson & Co.,
 
 283 F.2d 449, 452 (3d Cir.1960));
 
 see also In re Saugus Gen. Hosp.,
 
 698 F.2d 42, 44 (1st Cir.1983) (“Even those cases that have held that federal standards govern posi-petition setoffs under § 68, moreover, have cast those standards ‘ “with an interested eye” toward the [forum state’s] decisions.’ ” (quoting
 
 Goodson)
 
 (emphasis in original)). The Supreme Court of Texas has recognized the doctrine of promissory estoppel as set forth in section 90 of the
 
 Restatement (First) of Contracts. Preload Technology v. A.B. & J. Constr. Co., Inc.,
 
 696 F.2d 1080, 1084 (5th Cir.1983);
 
 Wheeler v. White,
 
 398 S.W.2d 93, 96 (Tex.1965);
 
 “Moore” Burger, Inc. v. Phillips Petroleum Co.,
 
 492 S.W.2d 934, 937 (Tex.1973);
 
 Fretz Constr. Co. v. Southern Nat’l Bank of Houston,
 
 626 S.W.2d 478, 480 (Tex. 1981). Section 90 provides:
 

 “A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.”
 
 Restatement (First) of Contracts
 
 § 90.
 

 The
 
 Wheeler
 
 court quoted from the United States Supreme Court decision in
 
 Dickerson v. Colgrove,
 
 10 Otto 578, 580, 100 U.S. 578, 580, 25 L.Ed. 618 (1880), in which the Court wrote:
 

 “ ‘The vital principle is that he who by his language or conduct leads another to do what he would not otherwise have done, shall not subject such person to loss or injury by disappointing the expectations upon which he acted. Such a change of position is sternly forbidden * * *. This remedy is always so applied as to promote the ends of justice.’ ” 398 S.W.2d at 96.
 

 Although promissory estoppel normally is considered a defensive plea, “it may be used by a plaintiff as a ground of entitlement to relief.”
 
 Kenney v. Porter,
 
 604 S.W.2d 297, 303 (Tex.Civ.App.—Corpus Christi 1980, writ ref’d n.r.e.);
 
 Southwest Water Servs., Inc. v. Cope,
 
 531 S.W.2d 873, 877 (Tex.Civ.App.—Fort Worth 1975, writ ref’d n.r.e.). Under Texas law the burden of proving all the essential elements of promissory estoppel is on the party asserting the doctrine.
 
 Concord Oil Co. v. Alco
 
 
 *1075
 

 Oil & Gas Corp.,
 
 387 S.W.2d 635, 639 (Tex.1965);
 
 Barfield v. Howard M. Smith Co. of Amarillo,
 
 426 S.W.2d 834, 838 (Tex.1968).
 

 We hold that Guadalupe is es-topped from denying that it would maintain the certificates of deposit as a trust account. Therefore, we affirm the district court’s order to turn over the funds.
 
 [11]
 
 The trial court made sufficient findings for us to conclude that Guadalupe in effect promised TMSC that the funds would be maintained separately as a trust account.
 
 [12]
 
 Under its Findings of Fact, the bankruptcy court, Judge Gandy, found that:
 

 “10.
 
 Prior to ... [the] wire transfer,
 
 TMSC explained to Guadalupe that such funds were trust funds in the nature of
 
 *1076
 
 tax and insurance escrow of its mortgagors. TMSC advised Guadalupe, however, that the interest earned from said Certificates of Deposit could be used to partially satisfy its obligation to Guadalupe.
 

 “11. Guadalupe,
 
 therefore,
 
 issued to TMSC three (3) Certificates of Deposit, each in the amount of $100,000.00, and styled as follows:
 

 “(a) Texas Mortgage Services Corporation Trust Account No. 1.
 

 “(b) Texas Mortgage Services Corporation Trust Account No. 2.
 

 “(c) Texas Mortgage Services Corporation Trust Account No. 3.
 

 “13. In August of 1982, [after the transfer] TMSC
 
 again
 
 advised Guadalupe of the trust nature of the funds held in those Certificates of Deposit.” (Emphasis added.)
 

 The bankruptcy court’s Findings of Fact indicate that the parties discussed the nature of the deposit “prior” to TMSC’s detrimental reliance in wiring the funds to Guadalupe, and understood that Guadalupe was entitled only to the interest generated by the account. Having learned that it would be able to keep any interest produced by the deposit, although under the conditions set out by TMSC, Guadalupe “therefore” issued certificates of deposit to TMSC, each bearing the label “Trust Account.”
 
 [13]
 
 Finally, the bankruptcy court’s findings indicate that TMSC again confirmed that the funds were to be maintained as a trust in August 1982, after the transfer had taken place. These findings lead us to conclude that Guadalupe is es-topped from denying the enforceability of its promise: Guadalupe agreed to, or acquiesced in, TMSC’s conditions concerning the proposed transfer of the funds; appellant reasonably should have expected that its agreement with or acquiescence in TMSC’s proposal would induce TMSC to proceed with the transfer of the $300,000; Guadalupe’s agreement induced TMSC to take action of a definite and substantial character by transferring the funds; and, enforcement of Guadalupe’s implicit promise to maintain the deposit as a trust account is necessary to promote the ends of justice.
 

 We find particular support for our holding in the rule stated in
 
 Turcotte v. Trevino,
 
 499 S.W.2d 705 (Tex.Civ.App.—Corpus Christi 1973, writ ref’d n.r.e.),
 
 on remand,
 
 544 S.W.2d 463 (Tex.Civ.App.—Corpus Christi 1976),
 
 rev’d on other grounds,
 
 564 S.W.2d 682 (Tex.1978). In that case, the Texas Court of Appeals wrote:
 

 “Where one having the right to accept or reject a transaction takes and retains benefits thereunder, he ordinarily ratifies the transaction, is bound by it, and cannot avoid its obligation or effect by taking a position inconsistent with it at a later time.” 499 S.W.2d at 712.
 

 Although the Texas Supreme Court reversed the
 
 Turcotte
 
 decision, it left this basic rule intact.
 
 See Turcotte,
 
 564 S.W.2d at 685-86 (holding that it is “a fundamental rule of law” that a person cannot take any beneficial interest under a transaction and then adopt a position, “even if well founded,” that would defeat the transaction). We believe appellant’s actions fall within this general rule. Guadalupe accepted the deposit on TMSC’s terms without protest. Having accepted the deposit on these restricted conditions, appellant now is es-topped from rejecting its promise to treat the certificates as trust funds. Any other rule would allow Guadalupe to obtain the
 
 *1077
 
 benefit of interest from the investors’ funds and yet refuse the disadvantageous part of its agreement.
 
 See also Central Power & Light Co. v. Del Mar Conservation Dish,
 
 594 S.W.2d 782, 791 (Tex.Civ. App.—San Antonio 1980, writ ref’d n.r.e.) (“A party may not accept the beneficial part of a transaction and repudiate the disadvantageous part. ‘One who retains benefits under a transaction ... is es-topped to take a position inconsistent therewith.’ ”);
 
 Boiles v. City of Abilene,
 
 276 S.W.2d 922, 924 (Tex.Civ.App.—Eastland 1955, writ ref’d) (a party in “good conscience should not be permitted to reap the benefits of ... contracts and at the same time refuse to pay the consideration therefor”);
 
 Mapco, Inc. v. Pioneer Corp.,
 
 447 F.Supp. 143, 150 (N.D.Tex.1978),
 
 aff'd,
 
 615 F.2d 297 (5th Cir.1980) (quoting Turcotte).
 

 Appellant argues that there is insufficient evidence to support the bankruptcy court’s fact-findings. Since we find considerable record support for the court’s findings, we reject this contention. Thomas Andrews, the President of TMSC, testified that he had had “numerous conversations” with James Lammers, the president of Guadalupe, during which they agreed that the $300,000 was to be deposited in Guadalupe so that the
 
 interest
 
 on the deposit “could be applied to the deficiency in the interest rate that we were not able to pay at that time.” Moreover, during direct examination, Andrews responded to questioning as follows:
 

 “Q. Mr. Lammers [of Guadalupe] testified that at the time those funds were received he had no knowledge from Texas Mortgage that those funds were in fact escrow or trust account funds. Do you agree with that statement?
 

 “A. No, I did not.
 

 “Q. Okay. Did you tell him something to the contrary?
 

 “A. Yes. We told him that we would place escrow funds balances or balances in his bank down there to at least start generating some additional income to make the deficiency in the interest payment we were unable to make.”
 

 In response to the question whether it was normal and customary in the banking industry for a trustee to use income produced from its trust for its own benefit, Andrews replied, “We are allowed to derive interest off of these accounts if they’re FDIC or FSLIC insured accounts.” Andrews also testified that the written agreement between TMSC and the permanent lenders provided that TMSC was to “segregate funds and place them in FDIC or FSLIC insured accounts,” and that only the large number of investors involved prevented the parties from styling the deposit as “TMSC, Trustee for A, B, C investor.” Andrews also rebutted Lammer’s testimony regarding the post-transfer telephone conversations. At trial, the following exchange occurred between Andrews and the court:
 

 “THE COURT: You heard Mr. Lam-mers testify flatly that you told him in August of 1982 that the certificates of deposit were for the reserve accounts, did you not, you heard him testify to that?
 

 “THE WITNESS: Yes, I heard that.
 

 “THE COURT: It’s rare that I have such a clear cut, black and white difference in testimony. It is your position, as I understand it, that that testimony is totally inaccurate?
 

 “THE WITNESS: Yes sir. We informed them at the time that the certificates were sent down there that they were sent down there as escrow deposits.
 

 “THE COURT: So whereas he said that you said it was a reserve account, you are saying that you said it was an escrow account?
 

 “THE WITNESS: Yes, Your Honor.
 

 “THE COURT: And I have to decide whom, in effect, is lying.”
 

 Reba Lee, Executive Vice President for TMSC, also testified on behalf of appellee. In response to the question, “At any time did you advise ... [Guadalupe] that these were trust funds?”, Lee stated, “Every time I talked to them.” Lee stated that during her conversations with employees of
 
 *1078
 
 Guadalupe regarding the wire transfers of the funds, she never indicated that the funds were to be used to satisfy the reserve account obligation, as the Guadalupe witnesses had testified. Rather, she testified that “[a]ll of my conversations [with Guadalupe] included that they were trust accounts.” In a December 14 letter from Lee to Guadalupe, which was admitted into evidence, Lee wrote, “I am once again making demand that the $300,000 deposited with Guadalupe Savings & Loan be returned. You were told from the beginning these were escrow funds and being sent to your Association on a temporary basis.”
 

 These portions of the record provide ample support for the trial court’s findings. Guadalupe argues that its testimony concerning the circumstances surrounding the wire transfer is more plausible than TMSC’s account of events, but does not offer any compelling reason why the court could not have determined that Andrews’ and Lee’s testimony was more credible. Although the district court was under no obligation to accept the bankruptcy court’s fact-findings,
 
 [14]
 
 it chose to accept those findings when it issued the turn-over order. Moreover, as heretofore indicated, appellant has waived the issue whether the district court erred by failing to hold a
 
 de novo
 
 hearing to reassess the facts. We will not attempt to reassess the credibility of witnesses whom we have not had an opportunity to see on the stand.
 
 United States v. Reddoch,
 
 467 F.2d 897, 898 (5th Cir.1972) (per curiam);
 
 Blum v. Gulf Oil Corp.,
 
 597 F.2d 936, 938 (5th Cir.1979) (per curiam);
 
 Harrison v. Flota Mercante Grancolombiana, S.A.,
 
 577 F.2d 968, 974 (5th Cir.1978);
 
 Ruiz v. Estelle,
 
 679 F.2d 1115, 1142 (5th Cir.1982),
 
 cert. denied,
 
 460 U.S. 1042, 103 S.Ct. 1438, 75 L.Ed.2d 795 (1983).
 

 Appellant further argues that TMSC should be estopped from maintaining that the $300,000 had been deposited for any purpose other than to comply with the reserve account obligation. Guadalupe argues that it relied to its detriment on TMSC’s assurances that the purpose of the deposit was to comply with the Reserve Agreement by: refraining from enforcing TMCS’s agreement to maintain a reserve account after the July 24 deposit had been made; continuing to pay interest on the funds that had been deposited with Guadalupe; extending the term of a $1 million note for an additional six months after the deposit; continuing to perform under the Warehousing Agreement and related contracts. We find no merit to this argument. The court opted for TMSC’s version of the facts. By negative implication, the court rejected appellant’s testimony that TMSC had indicated that the deposit itself could be applied to the reserve account. Because the element of a promise by the party to be estopped is not present, appellant does not have a valid claim under promissory estoppel.
 
 See Concord Oil,
 
 387 S.W.2d at 639;
 
 Barfield,
 
 426 S.W.2d at 838;
 
 Texas Bank & Trust Co. v. Lone Star Life Ins. Co.,
 
 565 S.W.2d 353, 358 (Tex.Civ.App.—Tyler 1978, no writ). If Guadalupe detrimentally changed its position after the July 24 transfer, it did so with the knowledge that it would derive only the interest generated by the deposit.
 

 Appellant finally argues that the deposit cannot be construed as a trust because such an arrangement would violate the terms of their Warehousing Agreement. In support of this argument, Guadalupe points out that the Warehousing Agreement does not contain any provision limiting Guadalupe to the interest generated from reserve account funds. We find appellant’s final argument meritless. The fact that the trust may have violated the terms of the Warehousing Agreement appears to be more the basis of a separate suit on the contract than indisputable proof that the parties could not have agreed to the trust arrangement. There is nothing in the Warehousing Agreement indicating that the parties contemplated or dealt with the possible deposit to the reserve account of funds mutually recognized to be third-
 
 *1079
 
 party trust funds. Moreover, since the parties acknowledge that TMSC has failed to comply with the Warehousing Agreement from the day of execution, it does not seem implausible that Guadalupe might have agreed to accept the deposit as a trust and to take only the interest, simply to obtain
 
 some
 
 funds for the reserve account.
 

 Having held that TMSC was properly awarded the turn over of the certificates of deposit under the doctrine of estoppel, the order below is affirmed.
 

 AFFIRMED.
 

 [1]
 

 . The case was tried by agreement of the parties as a "related” action to TMSC’s bankruptcy proceedings, pursuant to Local Rule of the Northern District of Texas Concerning Bankruptcy Cases and Proceedings ¶ (c)(1) (Mise. Order No. 33) (hereinafter "Local Rule”), which provides that "[a]ll cases under Title 11 and all civil proceedings arising under Title 11 or arising in or related to cases under Title 11 are referred to the bankruptcy judges of this district.”
 

 [2]
 

 . This review was made pursuant to the Local Rule at fff (d)(3)(B), (e). Local Rule 1f (d)(3)(B) provides:
 

 "In related proceedings the bankruptcy judge may not enter a judgment or dispositive order, but shall submit findings, conclusions, and a proposed judgment or order to the district judge, unless the parties to the proceeding consent to entry of the judgment or order by the bankruptcy judge.”
 

 Local Rule ¶ (e) provides:
 

 "(1) A notice of appeal from a final order or judgment or proposed order or judgment of a bankruptcy judge ... shall be filed within 10 days of the date of entry of the judgment or order or of the lodgment of the proposed judgment or order_
 

 “(2) (A) A district judge shall review:
 

 "(iii) a proposed order or judgment ... whether or not any notice of appeal or application for leave to appeal has been filed.
 

 "(B) In conducting review, the district judge may hold a hearing and may receive such evidence as appropriate and may accept, reject, or modify, in whole or in part, the order of judgment of the bankruptcy judge, and need give no deference to the findings of the bankruptcy judge. At the conclusion of the review, the district judge shall enter an appropriate order or judgment."
 

 [3]
 

 . After TMSC places a loan with a permanent lender, sometimes called an investor, it usually continues to handle the administration or servicing of the loan on the investor’s behalf as a “servicing agent.” In this capacity, TMSC remits loan payments to the investor on a monthly basis, handles insurance matters, and answers questions presented by and consults with the borrowers. Once a mortgage loan has been sold, however, TMSC constitutes no more than an agent for the permanent lender; the permanent lender becomes the
 
 actual owner
 
 of the mortgage loan upon purchase, as well as the owner of any loan payments collected by TMSC on its behalf. As a servicing fee for its administration of the mortgage loan, TMSC typically retains a small percentage of the loan payments it collects, as well as the interest generated on the payments during the period when they were held by TMSC, prior to forwarding to the investors.
 

 [4]
 

 . TMSC had established lines of credit at various savings institutions to obtain such interim financing. TMSC used the borrowed funds to make mortgage loans to real estate concerns, and “warehoused” the loans until it could locate investors to buy them.
 

 TMSC and Guadalupe also executed a separate Sale and Servicing Agreement, in which the parties agreed that Guadalupe would have the first opportunity to purchase any mortgage loans that TMSC offered for sale to investors. As with most other arrangements of this sort, the Sale and Servicing Agreement provided that TMSC would continue to service any mortgage loans purchased by Guadalupe. The Sale and Servicing Agreement also provided that TMSC would set up a trust account in Guadalupe, into which TMSC would deposit funds it collected on behalf of Guadalupe as a servicer of Guadalupe mortgage loans acquired from TMSC.
 

 [5]
 

 . The sum borrowed by TMSC was reflected by a promissory note in the original principal amount of $1,018,094.93. Subsequent advances were evidenced by three promissory notes in original principal amounts totaling $2,349,-857.57.
 

 [6]
 

 . Although TMSC was involved in bankruptcy proceedings, it was permitted to continue operating as a business under 11 U.S.C. § 303(f) (1979), since the proceedings were involuntary and no order for relief had yet been granted.
 

 [7]
 

 .
 
 See
 
 Local Rule,
 
 supra
 
 note 2, at ¶ (e)(2)(B).
 

 [8]
 

 . The hearing also addressed a motion by TMSC to overturn the bankruptcy court’s stay of the turn-over order pending appeal, which that court had granted on May 29, 1983. TMSC’s motion subsequently was denied on September 6, 1983, by Joint Order of the district court and the bankruptcy court.
 

 [9]
 

 . Although appellant originally had docketed its appeal in the district court, the parties subsequently agreed to a direct appeal to this Court pursuant to 28 U.S.C. § 1293(b) (West Supp. 1984). That statute provides:
 

 "[A] court of appeals shall have jurisdiction of an appeal from a final judgment, order, or decree of ... a District court of the United States or from a final judgment, order, or decree of a bankruptcy court of the United States if the parties to such appeal agree to a direct appeal to the court of appeals.”
 

 The district court, Judge Buchmeyer, and the bankruptcy court, Judge Roberts, approved the transfer of appeal by their Joint Order issued September 6, 1983. The Joint Order was executed pursuant to our local rule, Fed.R.App.P. 47.4.3, which addresses "Bankruptcy Appeals.” That rule provides:
 

 "An appeal, once docketed in the District Court or with the Clerk of the appellate panels, should such panels be. authorized, may not be transferred to this Court without the written approval of the district judge or appellate panel."
 

 The district court, Judge Fish, accordingly dismissed the appeal docketed in the district court, as directed by the Joint Order, on September 12, 1983.
 

 [10]
 

 .Having based our affirmance on the theory of estoppel, we decline to address the issue whether the deposited funds constituted a trust account, special account, or general account.
 

 [11]
 

 . Normally, funds deposited with a bank are general deposits which create a debtor-creditor relationship between the bank and its depositor.
 
 Citizens Nat’l Bank of Dallas v. Hill,
 
 505 S.W.2d 246, 248 (Tex.1974);
 
 In re Goodson Steel Corp.,
 
 488 F.2d 776, 779 (5th Cir.1974). When the bank and its depositor stand in this relationship, the bank has a right to setoff funds in the general account against indebtedness due from the depositor.
 
 See
 
 11 U.S.C. § 553 (1979);
 
 Western Shoe v. Amarillo Nat'l Bank,
 
 94 S.W.2d 125 (Tex.1936). Setoff is not permitted, however, if the funds involved are trust funds or if the depositor can show that the bank
 
 agreed
 
 to maintain the deposit as a trust fund.
 
 Citizens First Nat’l Bank of Tyler v. Cinco Exploration Co.,
 
 540 S.W.2d 292, 295 (Tex.1976);
 
 South Cent. Livestock Dealers, Inc. v. Security State Bank of Hedley,
 
 551 F.2d 1346, 1350-51 (5th Cir.1977);
 
 cf.
 
 Essay,
 
 The Aftermath of Penn Square Bank: Protecting Loan Participants from Setoffs,
 
 18 Tulsa L.J. 261, 268 (1982) (setoff is not permitted if loan participation funds are held in trust); Note,
 
 Classification of Loan Parti-cipations Following the Insolvency of a Lead Bank,
 
 62 Texas L.Rev. 1115, 1123 (a banking institution is permitted to setoff funds on deposit only if the funds are not held in trust). Because we have held that Guadalupe is estopped from denying that the transferred money constitutes trust funds, setoff is not permitted and appellant must turn over the funds.
 

 [12]
 

 . If a trial judge fails to make a specific finding on a particular fact, the reviewing court may assume that the court impliedly made a finding consistent with his general holding so long as the implied finding is supported by the evidence.
 
 Clinkenbeard v. Central S. W. Oil Corp.,
 
 526 F.2d 649, 651-52 (5th Cir.1976);
 
 Swanson & Youngdale v. Seagrave Corp.,
 
 561 F.2d 171, 173 n. 5 (8th Cir.1977); 9 C. Wright & A. Miller,
 
 Federal Practice and Procedure
 
 § 2579, at 712-13 (1971).
 

 We believe that the bankruptcy court found that Guadalupe specifically agreed to TMSC’s conditions, as discussed
 
 infra
 
 in text. Even if Guadalupe merely had acquiesced in TMSC’s proposal to deposit trust funds to generate interest, however, we still would find that Guadalupe is estopped. As Texas has applied the doctrine, it is unnecessary for Guadalupe to have specifically and expressly stated that it would maintain the funds separately as a trust to satisfy the “promise" element of estoppel. Its failure to protest the conditions which TMSC placed on the proposed transfer prior to accepting the deposit is enough to warrant estoppel. The decision by the Supreme Court in
 
 Dickerson,
 
 which the Texas Supreme Court quoted in
 
 Wheeler,
 
 said that “language
 
 or conduct"
 
 is sufficient. 100 U.S. at 580 (emphasis added). Failure to speak out to clarify a misunderstanding, when circumstances would give rise to a duty to speak, amounts to the conduct necessary for estoppel to apply. In
 
 Harris Millinery Co. v. Bryan,
 
 59 Tex.Civ.App. 477, 125 S.W. 999, 1001 (1910, no writ), the court wrote:
 

 “Acquiescence, to have the effect of an admission of the party to be affected thereby, or to constitute a concurrence in what is being said or done by another, ‘must exhibit some act of the mind and amount to voluntary demeanor or conduct of the party sought to be bound thereby. And, whether it is acquiescence in the conduct or in the language of others, it must plainly appear that such conduct was fully known or the language fully understood by such party before any inference can be drawn by his silence.’ [Citations omitted.] ... ‘The mere silence of one, when facts are asserted in his presence, is no ground of presuming his acquiescence unless the conversation was addressed to him under such circumstances as to call for a reply.’ ” (Emphasis added.)
 

 See also Palmer v. Fuqua,
 
 641 F.2d 1146, 1160 (5th Cir.1981) (To prove the defense of estoppel by silence, it must be shown that the party who failed to speak had a duty to speak.);
 
 Champlin Oil & Ref. Co. v. Chastain,
 
 403 S.W.2d 376, 404 (Tex.1965) (holding that objection was called for by the party to be estopped since an “ ‘estoppel may arise as effectually from silence, where it is a duty to speak, as from words spoken.’ ”);
 
 City of Mesquite v. Rawlins,
 
 399 S.W.2d 162, 167 (Tex.Civ.App.—Tyler 1966, writ refd n.r.e.) (“' "Estoppel is always predicated upon the conception that one pleading it has been mislead
 
 [sic
 
 ] to his prejudice by some statement, act, or conduct of another who thereafter seeks to assert a right inconsistent with such statement, act, or conduct. The basis of estoppel is deception.” ’").
 

 [13]
 

 . Appellant cites authority to the effect that a "
 
 'bare
 
 deposit under a trust title’ ’’ does not give rise to a trust.
 
 Fleck v. Baldwin,
 
 172 S.W.2d 975, 978 (Tex.1943) (emphasis added). The court’s use of "therefore” in the instant case, however, indicates that Guadalupe issued the certificates under the "trust” designation as a consequence of its discussion with TMSC concerning the limited use to which Guadalupe could apply the funds. While a deposit under the trust designation
 
 alone
 
 does not establish the existence of an agreement to maintain the funds as a trust, the court's findings are in substance that the designation was made pursuant to the parties’ understanding. In addition, there is evidence other than the style of the account to indicate that the parties agreed to segregate the funds as a trust.
 

 [14]
 

 .
 
 See
 
 Local Rule,
 
 supra
 
 note 2, at ¶ (e)(2)(B).