962 F.2d 11
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Clarence SCHIER, Plaintiff-Appellant,
v.
Jerry GOLBERG, d/b/a Golberg Dairy Equipment, and David R.
Lambert, Defendants-Appellees.
 Nos. 90-2991, 90-2992.
 United States Court of Appeals, Seventh Circuit.
 Submitted Sept. 4, 1991.*
Decided May 11, 1992.
 
 1
 Before COFFEY and EASTERBROOK, Circuit Judges, and MORAN, Chief District Judge.**
 
 ORDER
 
 2
 On February 24, 1988, the plaintiff-appellant, Clarence Schier, filed a two-count complaint against the defendants-appellees, alleging that the defendants tortiously converted his Model MRPX 314 commercial dairy separator to their own use when Golberg sold the separator to Lambert.[1] The court found in favor of the defendants, and the plaintiff appeals the district court's ruling. We affirm.[2]
 
 I. FACTS
 
 3
 Schier and Golberg are both sole proprietors in the business of buying, trading, and selling used dairy processing equipment. Between 1983 and 1987, Schier and Golberg participated in approximately ten to fifteen transactions involving either the buying or trading of used dairy equipment with one another, and they also entered into joint ventures in which they would purchase equipment, locate buyers, sell the equipment and divide the profits or the remaining equipment. Schier and Golberg were frequently involved in more than one transaction at a time, and some transactions carried over into subsequent deals in terms of financing and payment.
 
 
 4
 In February, 1987, Schier acquired the Model 314 cream separator in question from Western General Dairies, Inc., of Ogden, Utah. The following month Schier transported the Model 314 separator to Equipment Engineering in Indianapolis, Indiana, to allow the company, who was interested in purchasing it, an opportunity to inspect the separator. After an inspection of the separator, Equipment Engineering elected not to buy it, but agreed to permit Schier to store the machine on its premises while Schier attempted to find another buyer.
 
 
 5
 In June of 1987, when Schier told Golberg that the Model 314 separator was at Equipment Engineering and that Schier was interested in selling it, they spoke of $22,000 to $24,000 as a possible sales price. They discussed the potential sale of the separator on at least five separate occasions in June of 1987. Golberg claims that he told Schier he would like to receive a commission of $3,000 if he sold the separator and that Schier agreed to this amount. Golberg testified that Schier advised him that he could take possession of the separator in order to sell it. On June 23, 1987, Golberg took possession of the separator at Equipment Engineering and sold and delivered it to David Lambert's company, Separators, Inc., in Indianapolis, Indiana, and received $24,000 as payment for the sale. That same evening, Golberg told Schier that he had transferred the separator from Equipment Engineering to Lambert's Separators, Inc., and alleges that Schier agreed to the transfer.[3] Golberg stated that he did not tell Schier that he had received payment for the separator because they were involved in four other transactions at the same time and that it was his intention to settle all his transactions with Schier one time.
 
 
 6
 In contrast, Schier alleges that he never gave Golberg permission to remove the separator from Equipment Engineering or sell it. On July 8, 1987 (approximately two weeks after Golberg sold the separator to Lambert's Separators, Inc.), Schier went to Separators, Inc. to retrieve the Model 314 and return it to Equipment Engineering. Schier, upon arrival, was informed by David Lambert that Separators, Inc. had completed the purchase of the separator and resold it to a third party. Lambert and Schier then called Golberg, and Schier told Golberg that he did not wish to sell the machine to Separators, Inc. Schier asserts that Golberg never admitted in the phone conversation that the sale to Separators, Inc. had been completed. In contrast, Golberg maintains that during the phone conversation he reminded Schier that Schier had given him permission to sell the separator, and that he told Schier that the separator had been sold to Lambert for $24,000. Subsequently, Golberg credited Schier's account with $21,000, retaining $3,000 as commission for the sale of the separator.
 
 
 7
 Between July 8, 1987 and December, 1987, Schier and Golberg continued to do business with each other and at some time during this period Schier requested that Golberg reclaim the separator from Lambert, which Golberg refused to do. In late December, 1987, Schier claims that Golberg admitted for the first time that he sold the separator to Lambert for $24,000, while Golberg maintains that between July 8, 1987 and January, 1988 he told Schier on at least six or eight occasions that he sold the machine to Lambert's Separators, Inc. for $24,000. Moreover, Golberg claims that he told Schier he would give him $20,000 and requested that they settle all their accounts and resolve the situation. Schier declined Golberg's offer and brought suit.
 
 
 8
 At trial, testimony revealed that even though Schier and Golberg conducted numerous transactions, each failed to adequately document their transactions. Schier testified that he was not certain how much he and Golberg owed each other and that "bookkeeping problems basically is why we're here" in trial. Golberg also testified that while he kept his checks in a notebook to record his business transactions with Schier, he did not keep very accurate records of the transactions.[4] The trial court found in favor of Golberg and the plaintiff appeals.
 
 II. ISSUES FOR REVIEW
 
 9
 On appeal, the plaintiff alleges that: (1) the district court erred when determining that the plaintiff failed to prove by a preponderance of the evidence that Golberg converted the separator to his own use and that Schier failed to prove by a preponderance of the evidence that Golberg committed any criminal act that would entitle Schier to treble damages; (2) the trial court erred in accepting evidence that Golberg introduced to support his Counterclaim; and (3) the district court erred in denying Schier the opportunity to depose an unavailable witness on the eve of trial.
 
 III. DISCUSSION
 
 10
 A. The plaintiff Schier contends that the trial court erred in determining that he failed to prove by a preponderance of the evidence that the defendant Golberg converted the separator to his own use. "Under Fed.R.Civ.P. 52(a), in a trial without a jury, '[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.' " Hagge v. Bauer, 827 F.2d 101, 105 (7th Cir.1987) (quoting Fed.R.Civ.P. 52(a)).
 
 
 11
 Initially, Schier asserts that the district court erred in determining that both he and Golberg were equally credible witnesses. However, the Supreme Court has warned that an attack on a trial court's credibility determinations rarely succeeds, for "when a trial judge's finding is based on his decision to credit the testimony of one or two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error." Anderson v. City of Bessemer City, 470 U.S. 564, 575, 105 S.Ct. 1504, 1512 (1985); see Hagge v. Bauer, 827 F.2d at 105; see also United States v. Carrasco, 887 F.2d 794, 809 (7th Cir.1989).
 
 
 12
 The only evidence offered to support Schier's claim that Golberg converted the separator is Schier's testimony. However, Schier admitted that he and Golberg extensively discussed the possibility that they could sell the Model 314 for $22,000 to $24,000. In addition, Schier stated that Golberg told him sometime late in June, 1987 that Golberg had transported the Model 314 from Equipment Engineering and taken it to Separators, Inc. "in anticipation possibly of creating a sale of the machine." Schier also testified that he and Golberg discussed the fact that the Model 314 had been moved to Separators, Inc. so that it could be inspected prior to purchase. This testimony of Schier was essentially corroborated by Golberg. Moreover, both Schier and Golberg testified that they had a custom and practice of buying, selling, transporting and bartering pieces of equipment on behalf of each other. In fact, earlier in 1987, Schier had left another separator at Equipment Engineering and authorized Golberg to pick it up from Equipment Engineering.
 
 
 13
 In determining that both Schier and Golberg were equally credible, the trial judge specifically found that both parties suffered from lapses of memory and did not have additional evidence to refresh their recollections or support their testimony. Given the dearth of documents or other objective evidence that could contradict either witness' story, we refuse to upset the district court's credibility determination. Thus, we agree with the trial judge's findings that Schier failed to prove by a preponderance of the evidence that Golberg converted the separator to his own use. For the foregoing reasons, we also agree with the district court that Schier failed to prove by a preponderance of the evidence that Golberg committed any criminal act that would entitle him to treble damages.
 
 
 14
 B. The plaintiff Schier argues the district court erred in accepting Golberg's testimony about previous transactions between the two in support of Golberg's Counterclaim. Schier alleges that "under the laws [sic] of conversion, unrelated transactions cannot be considered." However, Schier has failed to cite any legal authority for this argument. "We repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority are waived (even where those arguments raised constitutional issues.)" United States v. Berkowitz, 927 F.2d 1376, 1384 (7th Cir.1991). Moreover, Schier failed to object to testimony at trial concerning the transactions discussed in Golberg's Counterclaim. Schier cannot claim error, as Federal Rule of Evidence 103(a)(1) precludes the finding of error on a ruling which admits evidence unless "a timely objection or motion to strike appears of record, setting the specific ground of objection."[5] Thus, by failing to object to the admission of the evidence and by failing to support his argument with pertinent authority, Schier has waived his opportunity to claim that any admission of such evidence constituted error.
 
 
 15
 C. Schier contends the district court erred in denying him the opportunity to depose an unavailable witness on the eve of trial because that witness' testimony would have substantiated his testimony and enabled him to establish his conversion charges. Schier intended to depose Vaughn Nielsen, the manager of Western General Dairies of Ogden, Utah, from whom Schier purchased the Model 314.
 
 
 16
 A district court's discovery ruling is reversed only on a clear showing of abuse of discretion. Indianapolis Colts v. Mayor & City Council of Baltimore, 775 F.2d 177, 183 (7th Cir.1985). "Under the Seventh Circuit standard, an abuse of discretion occurs when one or more of these circumstances obtains: (1) the record contains no evidence on which the court could rationally have based its decision; (2) the decision is based on an erroneous conclusion of law; (3) the decision is based on clearly erroneous factual findings; (4) the decision clearly appears arbitrary...." American Standard Inc. v. Pfizer, Inc., 828 F.2d 734, 739 (Fed.Cir.1987) (citations omitted).
 
 
 17
 Schier fails to argue that the decision was based on an erroneous conclusion of law or that the decision was arbitrary. Instead, Schier's argument is that it was an abuse of the court's discretion because the refusal to allow the deposition severely prejudiced his case. However, prejudice to the plaintiff's case is not a valid ground for finding abuse of discretion. Moreover, the district court's ruling was based on the fact that Schier made arrangements to depose Nielsen
 
 
 18
 "at such a late date that it disadvantaged the defendants and their ability to prepare either for deposition or for the trial if that deposition proceeded, in that the request was made long after discovery deadlines had passed and at a time when it was unreasonable to require the defendants to participate in that sort of discovery."
 
 
 19
 Schier's efforts to depose Nielsen began February 1, 1990, a mere 20 days before trial. Despite Schier's knowledge of Nielsen's potentiality as a witness in this case from its inception, Schier did nothing to take Nielsen's deposition within the court's imposed time limits. Moreover, Schier waited through three scheduled trial dates and several discovery cut-off dates before scheduling Nielsen's deposition. Finally, the proposed location for the deposition was Parowan, Utah, a remote town with no major cities or airports located nearby. Thus, the district court's finding that "it was unreasonable to require the defendants to participate in that sort of discovery" is not clearly erroneous.
 
 IV. CONCLUSION
 
 20
 The decision of the district court is AFFIRMED.
 
 
 
 *
 After examination of the briefs, this court concluded that oral argument would not be helpful in its determination of the merits of the appeal. Therefore, the appeal has been submitted on the briefs and record. See Fed.R.App.P. 34(a); Circuit Rule 34(f)
 
 
 **
 The Honorable James B. Moran, Chief Judge of the United States District Court for the Northern District of Illinois, is sitting by designation
 
 
 [1]
 The defendants filed several counterclaims against the plaintiff, none of which were successful. The defendants do not appeal their counterclaims
 
 
 [2]
 The plaintiff failed to present any arguments in his original brief on whether the district court erroneously dismissed his complaint against the defendants Lambert and Separators, Inc. The plaintiff's failure to argue with respect to the defendants Lambert and Separators, Inc. constitutes a waiver. Bugg v. International Union of Allied Industrial Workers of America, 674 F.2d 595, 598 n. 4 (7th Cir.1982); Cannon v. Teamsters & Chauffeur's Union, 657 F.2d 173, 177 (7th Cir.1981). Therefore, we will only address Schier's arguments with regard to the defendant Golberg
 
 
 [3]
 Earlier in the year, Schier had left another separator at Equipment Engineering and authorized Golberg to pick it up. Deposition testimony of Robert Behrens, President of Equipment Engineering, related that his decision to permit Golberg to take the Model 314 was based on the fact that Golberg had been authorized by Schier to pick up similar equipment a short time previously. Schier himself testified that the two transactions took place, "almost exactly the same way...."
 
 
 [4]
 Moreover, Schier admitted owing unpaid debts to Golberg for transactions and loans amounting to $37,250, subject to certain disputed offsets. On the other hand, Golberg testified that Schier owed him $83,363.20 as of the date of trial
 
 
 [5]
 Indeed, Schier not only failed to object to the testimony about the transactions discussed in the Counterclaim, but he also testified about the same transactions in response to questioning by his own attorney