# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 14, 2013

No. 12-30701

Lyle W. Cayce
Clerk

WOMAN'S HOSPITAL FOUNDATION,

Plaintiff - Appellant

v.

NATIONAL PUBLIC FINANCE GUARANTEE CORPORATION;
FINANCIAL GUARANTY INSURANCE COMPANY,

Defendants - Appellees

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:11-CV-14

Before STEWART, Chief Judge, DAVIS, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Appellant Woman's Hospital Foundation ("WHF") appeals the district court's dismissal of its claims against its former bond insurer in this contract dispute. We AFFIRM.

## FACTS AND PROCEEDINGS

*A. The Series 2005 Bond Issue*

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-30701

WHF operates Woman's Hospital in Baton Rouge, Louisiana. In 2005, seeking to fund expansion of its facility, WHF contracted with the Louisiana Public Facilities Authority (the "Authority"), a conduit bond issuer, to issue $39.7 million of tax-exempt bonds (the "Series 2005 Bonds"). The Authority issued the bonds and forwarded the proceeds of the issue to WHF in return for a promissory note.

To administer this bond issue and potential similar transactions in the future, WHF executed a trusteeship agreement with the Bank of New York Trust Company (the "Trustee"). This trusteeship was memorialized and organized by a Master Trust Indenture, executed by WHF and the Trustee. The Authority pledged the promissory note that it had received from WHF to the Trustee, and WHF assigned to the Trustee a security interest in its current and future receipts (the "Assignment"). Completing this series of transactions, WHF executed a supplemental indenture, pursuant to the terms of the Master Trust Indenture, that effected the securitization of the Series 2005 Bonds by the security interest held by the Trustee as a result of the Assignment.

In order to lower its borrowing costs, WHF also contracted with Financial Guaranty Insurance Co. ("FGIC") to insure the payments of principal and interest due to the holders of the Series 2005 Bonds (the "Insurance Contract"). This insurance allowed the Authority to market the Series 2005 Bonds at far better rates than would otherwise have been possible. The Insurance Contract contained a number of restrictions on the ability of WHF to issue further debt during the term of the Series 2005 Bonds. In particular, Section 2.2(f) of the Insurance Contract provided that WHF would not incur any new indebtedness unless the debt met certain "stress-test" conditions, and Section 2.6 provided that WHF could not amend or supplement the Master Trust Indenture without FGIC's consent.

No. 12-30701

*B.  The Series 2010 Bond Issue*

In 2008, WHF decided to build an entirely new hospital.  To achieve this goal, WHF planned to issue $350 million in new bonds (the "Series 2010 Bonds"). It intended that these bonds would be secured under the terms of the Master Trust Indenture.  In December 2009, pursuant to Section 2.6 of the Insurance Contract, WHF asked FGIC's successor-in-interest, National Public Finance Guarantee Corp. ("National"), for its consent to supplement and amend the Master Trust Indenture to cover this new bond issue.

The issuance of the Series 2010 Bonds was a time-sensitive matter.  WHF believed that the first quarter of 2010 was its ideal window for marketing the bonds.  Despite the Series 2010 Bonds meeting the stress-test conditions of Section 2.2(f) of the Insurance Contract, National refused to give its consent immediately.  It requested that WHF schedule a site visit and otherwise sought to condition its consent on further concessions on the part of WHF.

Realizing that it would not be able to issue the Series 2010 Bonds in January as planned if it continued to try to obtain National's consent, WHF instead defeased the Series 2005 Bonds in their entirety, incurring prepayment penalties in excess of $2.5 million.    WHF believed National's withholding of consent was a deliberate ploy to force exactly this course of action, which had the effect of relieving National of its responsibilities under the Insurance Contract far earlier than would otherwise have been the case.  WHF also believed that National's withholding of consent was without authority under the Insurance Contract—it interpreted the Insurance Contract to require National's consent under Section 2.6 for supplements and amendments covering new debt issues so long as the new debt would meet the stress-test requirements of Section 2.2(f).

In December 2010, WHF brought this action against National in Louisiana state court, alleging breach of contract, breach of the duty of good faith, abuse of rights based on improper motives, and detrimental reliance.    National

3

removed the case to the district court and filed a motion to dismiss for failure to state a claim. The district court dismissed National's motion without prejudice and advised the parties to enter settlement negotiations. When these failed, National renewed its motion.

National argued that the insurance contract provided it with an unqualified right of consent to proposed supplements and amendments to the Master Trust Indenture and that as a result it had not breached its contract with WHF. National further contended that it withheld consent for economic reasons that, as a matter of law, cannot constitute bad faith or an abuse of rights. Finally, National argued that the WHF's pleadings by their own terms defeated any claim of detrimental reliance.

The district court found that:

> the insurance agreement plainly and explicitly provides for the bond insurer's right to consent to any change to the Master Trust Indenture. . . . WHF had the ability to negotiate for the right of the bond insurer to consent [to be] based on more objective criteria, but it failed to do so.

As a result, it held that WHF's breach-of-contract claim was without merit. It further held that, since National's failure to give consent was expressly authorized by the Insurance Contract, the denial of consent could not as a matter of law be in bad faith. It similarly found WHF's abuse-of-rights claim unavailing on the ground that, even if National did withhold consent to force an early defeasement, the use of such "contractual leverage" for economic gain did not amount to an abuse of rights under Louisiana law. Finally, the district court held that any reliance by WHF on the indefinite "promises" it alleged National had made in the course of their negotiations was unreasonable as a matter of law, thereby defeating its detrimental reliance claim.

WHF appeals, challenging the district court's interpretation of the contractual provisions providing National with its right of consent.

No. 12-30701

## STANDARD OF REVIEW

"We review a district court's ruling on a motion to dismiss de novo." *Wampler v. Sw. Bell Tel. Co.*, 597 F.3d 741, 744 (5th Cir. 2010). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[F]ederal courts sitting in diversity apply state substantive law." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996). "Under Louisiana law, the interpretation of an unambiguous contract is an issue of law for the court." *Tex. E. Transmission Corp. v. Amerada Hess Corp.*, 145 F.3d 737, 741 (5th Cir. 1998). "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." LA. CIV. CODE ANN. art. 2046.

## DISCUSSION

### A. The parties' arguments

WHF contends that the district court's interpretation of the Insurance Contract as giving National an unqualified right of consent was in error because it rendered precatory Section 2.2(f), which provides the stress-test conditions that WHF was required to meet before incurring new indebtedness. If National had an absolute right of consent to new indebtedness regardless of the stress-test conditions, then Section 2.2(f) would serve no purpose. Therefore, WHF reads the Insurance Contract as giving National a right of consent to new indebtedness under Section 2.6 only if it does not meet the requirements of Section 2.2(f). New indebtedness that does meet those requirements would not require National's consent.

National contends that WHF's argument is based on a misapprehension of the Insurance Contract and the Master Trust Indenture. In National's view, Section 2.2(f) restricts the ability of WHF to incur any new indebtedness, while

5

Section 2.6 provides a right of consent only to new supplements and amendments to the Master Trust Indenture, which not all new indebtedness requires. National asserts that a new supplement or amendment is required only when WHF incurs a subset of indebtedness defined as "obligations" under the Master Trust Indenture. National argues for a definition of "obligations" as the indebtedness securitized by the security interest held by the Trustee. WHF disagrees, and has advanced the view that any new indebtedness would constitute an obligation and that the terms are functionally coextensive.

*B. Analysis*

The plain text of the Master Trust Indenture militates against WHF's argument. The Master Trust Indenture explicitly refers to "obligations" as a subset of "indebtedness." For example, it defines the term "Outstanding" as "(a) when used with reference to Obligations, all Obligations authenticated and delivered under this Indenture; and (b) when used with reference *to any other Indebtedness*, all Indebtedness theretofore issued or incurred" (emphasis added). All indebtedness, therefore, cannot constitute "obligations."

The Master Trust Indenture also supports National's argument that the proper definition of "obligations" is indebtedness secured by the security interest held by the Trustee, and which as a result requires a supplement or amendment to the Master Trust Indenture. "Obligations" and "indebtedness" are defined separately under the Master Trust Indenture. "Indebtedness" is defined as "any indebtedness or liability for borrowed money," while "obligations" are defined as "the Series 2005 Note and any other obligation issued by [WHF] in accordance with Section 2.03." Section 2.03 provides the process by which "obligations" may be added to the Master Trust Indenture by means of supplements or amendments. Section 2.06 of the Master Trust Indenture states that "Pursuant to the Assignment, [WHF]. . . has assigned and granted to the Trustee . . . a continuing security interest in all presently existing and future Receipts . . . in

order to provide security for certain *Obligations* issued pursuant to this Indenture" (emphasis added).[1]

Based on the foregoing provisions of the Master Trust Indenture, the nature of the two provisions of the Insurance Contract at issue is clear. Section 2.2(f) sets an overall limit on all indebtedness that WHF can incur. Section 2.6, on the other hand, has no effect on the ability of WHF to incur indebtedness, unless WHF intends that the new indebtedness be secured by the security interest held by the Trustee. Such secured indebtedness constitutes an "obligation" within the meaning of the Master Trust Indenture, requiring issuance of a supplement or amendment under Section 2.03. Issuance of a supplement or amendment triggers the bond insurer's right of consent under Section 2.6 of the Insurance Contract. Thus, while the limits of Section 2.2(f) apply to any action that WHF might take that would incur additional indebtedness of any kind, National would only have a right of consent when, as was the case with the Series 2010 Bonds, WHF sought to incur a new "obligation," thereby burdening further the security interest held by the Trustee.

For this reason, we hold that the district court correctly stated that National's right of consent was without "qualifications or exceptions" with respect to the Series 2010 Bonds; that the district court did not err in concluding that National was within its rights to withhold its consent as a matter of law, notwithstanding the fact that the Series 2010 Bonds met the stress-test conditions of Section 2.2(f) of the Insurance Contract; and that the district court correctly dismissed WHF's claims.

---

[1] National's interpretation is further supported by other documents in the record. The official bond offering statement of the Series 2005 Bonds, for example, states that: "Under certain conditions specified in the Master Indenture, Obligated Group Members may issue additional Obligations . . . [that] will be equably and ratably secured by the Master Indenture . . . . In addition, the Master Indenture permits the Credit Group Members to issue other indebtedness" (emphasis added).

No. 12-30701

## CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.