# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
October 8, 2013

Lyle W. Cayce
Clerk

No. 12-20399

TRACIE JACKSON; LINDA DUNSON,

Plaintiffs-Appellants,

v.

NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, d/b/a NAACP; NAACP HOUSTON BRANCH; YOLANDA SMITH,

Defendants-Appellees.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:11-CV-2474

Before STEWART, Chief Judge, and KING and PRADO, Circuit Judges.

PER CURIAM:[*]

Plaintiffs-Appellants Tracie Jackson and Linda Dunson appeal from the district court's grant of Defendants-Appellees' motion to dismiss for failure to state a claim. For the following reasons, we AFFIRM in part, and we VACATE and REMAND in part.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-20399

## I. FACTS AND PROCEDURAL HISTORY

### A.     Factual Background

Tracie Jackson and Linda Dunson (collectively "Plaintiffs"), both lawyers, were employed by the National Association for the Advancement of Colored People ("NAACP"), specifically by the NAACP Houston Branch (the "Branch") and the Branch's Executive Director, Yolanda Smith.  Smith hired Dunson in January 2008 and Jackson in 2010.  An Interest on Lawyer Trust Account ("IOLTA") grant funded Dunson's position, and a Basic Legal Services ("BLS") grant funded Jackson's position.  The Texas Access to Justice Foundation ("TAJF") provided both grants to the Branch.  Dunson's and Jackson's employment terminated on August 31, 2010 when the funding for these grants expired.  Both re-applied for positions and were denied.

Prior to their termination, in June 2010, Plaintiffs and Branch employees were informed by Smith that the Branch would be unable to make payroll and that the grant monies were "pooled together" to pay for Branch expenses.  Jackson e-mailed and informed the Branch President of the "pooling" of grant monies, among other complaints.  Jackson then reported her concerns to the director of TAJF.  When the director called Smith about these concerns, Smith stated that Ms. Jackson was a "problem employee" and was "causing morale problems among coworkers."  Smith later referred to Jackson as a "disgruntled employee," which was reported in the Houston Chronicle.

Smith's actions as Executive Director have been controversial. A 2005 audit by the Texas Workforce Commission revealed improprieties regarding the expenditures of grants.  A separate NAACP audit of the Branch's activities from 2003–2006 found improprieties with the Branch's accounting system, its relationship with the National Office, and its disclosure of its 501(c)(4) status.  TAJF conducted its own site visit of the Branch in 2008 and discovered that financial reports were not submitted and no audit was conducted, as required,

2

No. 12-20399

by TAJF in 2006 and 2007. TAJF continued to fund the grants even after this discovery.

In 2011, Dunson was elected to the Branch's Executive Committee and began investigating Smith. She initially found that the BLS grant had been underspent. On May 26, 2011, her investigation culminated in a confrontation with Smith when she and a number of other Executive Committee members entered Smith's office after hours. Smith allegedly left with a Branch computer, and the Executive Committee terminated Smith for the removal of its property. The NAACP later reinstated Smith and expelled Dunson, and four newly elected executive committee members, from membership for entering Smith's office.

After Smith's reinstatement, members of the Executive Committee filed an Article X petition[1] with the NAACP that has yet to be decided. TAJF suspended the final disbursements of the BLS and IOLTA grants on June 20, 2011 after finding that the Branch had not abided by the terms and provisions that governed the grant money. TAJF later denied grant requests for the 2011–12 year. The NAACP's own auditor supported TAJF's conclusions. Jackson filed a complaint with the National Labor Relations Board ("NLRB"). The NLRB ruled in July 2011 that the Branch committed an unfair labor practice by refusing to re-hire Jackson because of her complaints to the Executive Committee about the lack of funds for payroll and threats of legal action. The NLRB ordered back pay for Jackson and her reinstatement.

## B.    Procedural History

On July 1, 2011, Jackson sued the NAACP, the Branch, and Smith (collectively "Defendants") in federal district court. On August 29, 2011, Jackson amended her complaint adding Dunson as a plaintiff. The causes of action in the first amended complaint were (1) the Racketeer Influenced and Corrupt

---

[1] Article X is a provision of the NAACP constitution allowing for members to file a complaint against any officer of a Branch.

No. 12-20399

Organizations Act ("RICO") 18 U.S.C. § 1961 et seq., (2) breach of fiduciary duties, (3) negligent retention and hiring, (4) tortious interference with contract, and (5) defamation. On September 13, 2011, the NAACP, later joined by the Branch and Smith, filed a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss the case for failure to state a claim. Plaintiffs responded and attached numerous documents referenced in the complaint.

On September 21, 2011, Plaintiffs filed a second amended complaint, without filing a motion for leave to amend, withdrawing the claims under RICO, negligent retention and hiring, tortious interference with contract, and defamation. On October 17, 2011, Plaintiffs filed a "corrected" second amended complaint. Plaintiffs filed with this complaint an unopposed motion for leave to amend, but Plaintiffs filed it as an attachment instead of a docketed motion. Defendants opposed this motion. The "corrected" second amended complaint included the previously withdrawn RICO, defamation, and tortious interference with contract claims.

On May 18, 2012, the magistrate judge gave Plaintiffs the option to proceed on either their first amended complaint or uncorrected second amended complaint, which Defendants did not oppose. Plaintiffs elected to proceed with their first amended complaint. The magistrate judge then issued a report formally denying Plaintiffs leave to amend with the second "corrected" complaint and granting Defendants' motion to dismiss. Plaintiffs raised objections to the report to the district court. The district court adopted the report in full and dismissed Plaintiffs' claims with prejudice. Plaintiffs appeal several issues: (1) the denial of leave to amend their complaint; (2) the improper application of the Rule 12(b)(6) standard; (3) the dismissal of Jackson's RICO claim;[2] and, (4) the

---

[2] Plaintiffs' brief only addresses Jackson's RICO claim; therefore, review of any other claim is waived. *See Trico Marine Assets Inc. v. Diamond B. Marine Servs. Inc.*, 332 F.3d 779, 790 n.6 (5th Cir. 2003) (quoting *In re Tex. Mortg. Serv. Corp.*, 761 F.2d 1068, 1073 (5th Cir.

4

dismissal of various state law claims. We address these issues in turn, and AFFIRM the district court's dismissal in part and VACATE and REMAND in part.

## II. DISCUSSION

### A.    Denial of Leave to Amend

We review a district court's denial of leave to amend a complaint for abuse of discretion. *Ballard v. Devon Energy Prod. Co.*, 678 F.3d 360, 364 (5th Cir. 2012). We have recognized that "[d]enial of leave to amend may be warranted for undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies, undue prejudice to the opposing party, or futility of a proposed amendment." *Id.* (citations omitted).

We find no abuse of discretion here where Plaintiffs' errors and misrepresentations give rise to a number of reasons to deny leave to amend the complaint. First, Plaintiffs failed to file a motion for leave to amend with their second amended complaint. Plaintiffs then misrepresented the motion for leave to amend as unopposed for their second "corrected" complaint. Plaintiffs improperly filed the motion and labeled the new complaint "corrected" when it made substantive changes. Finally, Plaintiffs were allowed to proceed on the first amended complaint, which was not substantively different from the "corrected" complaint Plaintiffs sought leave to file.[3] There was no abuse of discretion by the lower court under these circumstances.

### B.    Application of 12(b)(6) Standard

---

1985) ("Issues not raised or argued in the brief of the appellant may be considered waived and thus will not be noticed or entertained by the court of appeals.") (emphasis omitted).

[3] Failing to recognize that futility is a reason to deny an amendment, Plaintiff Jackson argued at the hearing on the motion for leave to amend that all of the complaints were not substantively different, adding no new facts, "just" adding the causes of action back into the complaint.

No. 12-20399

We have recognized that in considering a Rule 12(b)(6) motion to dismiss, courts "must consider the complaint in its entirety, as well as other sources courts ordinarily examine . . . in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (quoting *Tellabs, Inc. v. Makor Issues & Rights Ltd.*, 551 U.S. 308, 322 (2007)) (internal quotation marks omitted). Plaintiffs allege that the lower court erred by not considering all documents referenced in its complaint and attached as exhibits in Plaintiffs' motions opposing the 12(b)(6) dismissal. There was no error here. The lower court's decision contained numerous references to facts that could only be found in such documents.

## C.    RICO Claim

We review a district court's grant of a Rule 12(b)(6) motion to dismiss de novo. *Bass v. Stryker Corp.*, 669 F.3d 501, 506 (5th Cir. 2012) (citing *Wampler v. Sw. Bell Tel. Co.*, 597 F.3d 741, 744 (5th Cir. 2010)). We accept all well-pleaded facts as true and view the facts in the light most favorable to the nonmovant. *Id.* (citing *Jebaco Inc. v. Harrah's Operating Co.*, 587 F.3d 314, 318 (5th Cir. 2009)). "Dismissal is appropriate when the plaintiff has not alleged enough facts to state a claim to relief that is plausible on its face or has failed to raise his right to relief above the speculative level." *Id.* (citing *Wampler,* 597 F.3d at 744). We also review a district court's dismissal for lack of standing de novo. *Joffroin v. Tufaro*, 606 F.3d 235, 238 (5th Cir. 2010).

To state a civil RICO claim under any subsection in 18 U.S.C. § 1962, "there must be: (1) a person who engages in (2) a pattern of racketeering activity (3) connected to the acquisition, establishment, conduct, or control of an enterprise." *Brown v. Protective Life Ins. Co.*, 353 F.3d 405, 407 (5th Cir. 2003)

(quotation marks and citation omitted).[4] A plaintiff must establish standing to bring a civil RICO claim. *Price v. Pinnacle Brands, Inc.*, 138 F.3d 602, 606 (5th Cir. 1998). "Any person injured in his business or property by reason of a violation of section 1962" may sue pursuant to the civil cause of action created by RICO. 18 U.S.C. § 1964(c). Thus, a plaintiff must satisfy two elements to establish RICO standing: injury and causation. *Price*, 138 F.3d at 606.

We have noted that "[i]njury to mere expectancy interests or to an intangible property interest is not sufficient to confer RICO standing," *Price*, 138 F.3d at 607 (internal quotation marks and citation omitted). Addressing the causation requirement, a RICO predicate offense must "not only [be] a 'but for' cause of [plaintiff's] injury, but [it must be] the proximate cause as well." *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992). In assessing proximate cause, "the central question [we] must ask is whether the alleged violation led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006). Applying the proximate cause standard from *Anza* and *Holmes*, we conclude that the alleged RICO violation, based on the predicate acts of mail and wire fraud committed by Smith against TJAF, did not proximately cause Jackson's alleged injury.[5]

Jackson asserts injury because the Branch has lost its grant funding and cannot reinstate her pursuant to the NLRB order.[6] We assume, without

---

[4] Plaintiffs claimed a violation of 18 U.S.C. § 1962(b), which states: "[i]t shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which . . . [affects] interstate or foreign commerce." 18 U.S.C. § 1962(b).

[5] We assume without deciding that Jackson has sufficiently alleged the predicate acts of mail and wire fraud, which she states in her complaint have occurred since 2003 when Smith falsified financial records submitted to TAJF.

[6] We note that although Jackson cannot be reinstated to her specific position, she makes no allegations that she cannot be offered any "substantially equivalent" employment at the Branch as the order itself would permit. Because Defendants do not argue otherwise,

deciding, that Jackson's interest in the NLRB order establishes a sufficient injury for RICO standing but we conclude that Jackson cannot establish proximate causation between this injury and the RICO predicate acts of mail and wire fraud. The cause of Jackson's asserted harm (the Branch's inability to reinstate her) is an action entirely distinct from the alleged RICO violations (the predicate acts of wire and mail fraud by Smith against TAJF). *See Anza*, 547 U.S. at 458 (holding that defendant's act of lowering prices was entirely distinct from its alleged RICO fraud of not charging sales tax, which defrauded the State of New York, not the plaintiff, a competitor company of defendant). Jackson was neither the target nor the victim of the predicate acts. *See Cullom v. Hibernia Nat'l Bank*, 859 F.2d 1211, 1218 (5th Cir. 1988). The Branch and TAJF, if anyone, were the direct victims of the RICO activity. *See Anza*, 547 U.S. at 460 (finding that the State of New York was the direct victim of the defendant's failure to charge customers sales tax).

Jackson's injury, properly characterized as her loss of employment, "does not flow from" Smith's alleged wire and mail fraud committed against TAJF. *See Cullom*, 859 F.2d at 1217 (holding that employees fired because they reported or refused to participate in RICO activities do not have standing because their injury "does not flow from" the RICO activity); *see also Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 24 (2d Cir. 1990) (holding that an employee's loss of commissions and employment was not proximately caused by defendants' RICO violations). Jackson fails to recognize that TAJF based its decision to pull the funding predominately upon acts unrelated to the predicate RICO acts.[7] *See Anza*, 547 U.S. at 458–59. Even if TAJF had pulled its funding because of the

---

we assume that the Branch cannot offer her any type of equivalent employment.

[7] Notably, in a letter stating the reasons for TAJF's decision, Smith's actions are only mentioned twice, and these actions are unrelated to the mail and wire fraud Jackson claims establish the RICO predicate acts.

predicate acts, Jackson's alleged injury is proximately caused only by the discovery of these acts by TJAF and the consequences following this discovery, not by the alleged RICO violations. *See Hollander v. Flash Dancers Topless Club*, 173 F. App'x 15, 17 (2d Cir. 2006) (summary order) (citations omitted) (unpublished) (stating that "[the Second Circuit has] affirmed the dismissal under Rule 12(b)(6) of a RICO complaint where the alleged injuries were proximately caused not by the alleged racketeering violations, but by . . . their discovery by the victim and the consequences of that [] discovery."). The relationship between the harm to Jackson and the alleged RICO activity is too attenuated here to support a finding of proximate causation sufficient to confer standing.

Jackson relies on two Ninth Circuit cases, *Diaz v. Gates*, 420 F.3d 897 (9th Cir. 2005) and *Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163 (9th Cir. 2002), an Eleventh Circuit case, *Williams v. Mohawk Industries Inc.*, 465 F.3d 1277 (11th Cir. 2006), and a district court case, *Cunningham v. Offshore Specialty Fabrications, Inc.*, 543 F. Supp. 2d 614 (E.D. Tex. 2008), for the principle that loss of employment is actionable as a RICO claim and sufficient to confer RICO standing. Jackson fails to make any argument demonstrating the directness of her injury—the applicable proximate causation standard from *Anza*. Further, none of the cases she cited are instructive on this appeal. *Diaz* was a *pre-Anza* case that did not apply the applicable causation standard, see *Diaz*, 420 F.3d at 901–02, and the other cases concluded that plaintiffs demonstrated a direct injury from the RICO predicate acts of their employers who hired illegal workers, which depressed plaintiffs' wages, see *Williams*, 465 F.3d at 1288–90; *Mendoza*, 301 F.3d at 1168–72; *Cunningham*, 543 F. Supp. 2d at 638–40. Jackson cannot demonstrate that type of direct injury based on the predicate acts of mail and wire fraud in this case.

No. 12-20399

The underlying premises of the proximate cause requirement further confirm this conclusion. These premises, as set forth by the Supreme Court, are: "(1) the factual difficulty of measuring indirect damages and distinguishing among independent causal factors; (2) the complexity of apportioning damages among plaintiffs to remove the risk of multiple recoveries; and[,] (3) the vindication of the law through compensation of directly-injured victims." *Walters v. McMahen*, 684 F.3d 435, 444 (4th Cir. 2012) (citing *Holmes*, 503 U.S. at 269–70); *see also Anza*, 547 U.S. at 458–60. Notwithstanding the lack of an appreciable risk of multiple recoveries, these underlying premises illustrate why Jackson's alleged injury was not a direct result of the alleged RICO violation. *See Anza*, 547 U.S. at 459–60. A combination of independent causal factors led to Jackson's NLRB order and the Branch's inability to reinstate her, and Jackson was neither the victim nor the target of the RICO activity. Because Jackson cannot establish proximate causation between her asserted injury and the RICO activity, Jackson has failed to sufficiently allege facts that support standing to bring a civil RICO claim. The lower court properly dismissed Jackson's RICO claim.

## D.    State Law Claims

We review a district court's grant of a Rule 12(b)(6) motion to dismiss de novo. *Bass*, 669 F.3d at 506 (citing *Wampler*, 597 F.3d at 744). Plaintiffs appeal the dismissal of their state law claims for: (1) breach of fiduciary duty, (2) negligent retention and hiring, (3) the ability to sue on behalf of the members of the Branch for these claims, and (4) Jackson's defamation claim against Smith.[8]

---

[8] Plaintiffs also appeal a breach of contract and a breach of a duty of obedience claim. Because these claims were not raised in Plaintiffs' complaint or argued before the district court, we decline to reach them on appeal. *See Celanese Corp. v. Martin K. Eby Constr. Co. Inc.*, 620 F.3d 529, 531 (5th Cir. 2010) (citing *AG Acceptance Corp. v. Veigel*, 564 F.3d 695, 700 (5th Cir. 2009)) ("The general rule of this court is that arguments not raised before the district court are waived and will not be considered on appeal.").

No. 12-20399

After dismissing Plaintiffs' federal cause of action, the district court dismissed all state law claims on the merits, applying Texas law collectively to the Defendants. Although neither party raised the argument, in conducting a de novo review we conclude that the lower court erred in its application of state law to the NAACP. The NAACP is incorporated under the laws of New York, making it a foreign not-for-profit corporation. New York law should have applied to the NAACP. *See* Tex. Bus. Orgs. Code Ann. § 1.102.

Under these circumstances, where New York law was not argued by either party at any point in the litigation nor applied by the lower court, we vacate the district court's decision and remand these claims. However, having dismissed the federal cause of action, it is well-within the district court's discretion on remand to dismiss the state law claims by declining to exercise supplemental jurisdiction. *See* 28 U.S.C. § 1367(c). In light of this discretion and in the interests of fairness and judicial efficiency, we vacate the district court's judgment on all of the state law claims and remand these claims against all Defendants for a determination consistent with this opinion.[9]

### III. CONCLUSION

For these reasons, we AFFIRM the district court's grant of Defendants' motion to dismiss in part and VACATE and REMAND in part.

---

[9] *See* 28 U.S.C. § 2106 (providing Court of Appeals with the power to "vacate, set aside or reverse any judgment, decree, or order of a court . . . and [] remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances."); *see also GuideOne Specialty Mut. Ins. Co. v. Missionary Church of Disciples of Jesus Christ*, 687 F.3d 676, 682 n.3 (5th Cir. 2012).