CONCURRING IN PART AND DISSENTING IN PART ALICE M. BATCHELDER, Circuit Judge, concurring in part and dissenting in part. I concur with the majority’s opinion regarding Plaintiffs’ exclusivity claim. Plaintiffs have failed to allege that the communications services agreements (the “Agreements”) grant Crystal Clear an improper “exclusive right to provide” telecommunication services to the developments. However, in my view, despite multiple opportunities to do so, Plaintiffs have failed to articulate a suitable market in which the purported antitrust violation took place. Therefore, with respect to Plaintiffs’ antitrust tying claim, I respectfully dissent from Part II.B of the majority’s opinion and would hold that Plaintiffs' have failed to state a claim upon which relief can be granted.[1] I would find that Plaintiffs have failed to state an antitrust tying claim because they do not allege that the purported tying arrangement “affects a substantial volume of commerce in the tied market.” Mich. Div.-Monument Builders of N. Am. v. Mich. Cemetery Ass’n, 524 F.3d 726, 732 (6th Cir. 2008) [hereinafter Monument Builders] (citation omitted). With respect to the tied market, Plaintiffs allege only that “[t]he amount of interstate commerce affected in the market for the sale of lots in the Neighborhood and/or the sale of telecommunications in the Neighborhood is substantial.” .While the majority infers “that alleging harm to particular neighborhoods equates to alleging harm to the general market that covers those neighborhoods,” it cites no case, and I have found none, to support that conclusion.[2] Plaintiffs must “defín[e] the relevant product market and demonstrate] the defendant’s power in that market,” and they “must also define the relevant geographic market and demonstrate that -the defendant’s actions produced anticompetitive effects in that defined area.” Id. at 733 (citing Found. for Interior Design Educ. Research v. Savannah Coll. of Art & Design, 244 F.3d 521, 531 (6th Cir. 2001)). “The selected geographic market must ‘both correspond to the commercial realities of the industry and be economically significant.’ ” Id. (quoting Brown Shoe Co. v. United States, 370 U.S. 294, 336-37, 82 S.Ct. 1502, 8 L.Ed.2d 510 (1962)). “[T]he Neighborhood” is not a relevant geographic market. As the district court explained, the relevant geographic market cannot be the area in which Crystal Clear allegedly has exclusive control; it is self-evident that the purported tying arrangement would have a substantial effect in the location where all purchasers of both the tying and tied product reside, i.e. the neighborhoods. This is a facile “pleading maneuver[]” that artificially narrows the broader economic and geographic market for telecommunication services to create a “fictitious market” in which any sales by Crystal Clear would cause a substantial effect. Apani Sw., Inc. v. Coca-Cola Enters., Inc., 300 F.3d 620, 633 (6th Cir. 2002). A geographic market must reflect the commercial realities of the telecommunication-services industry and be economically significant. Plaintiffs do not allege that the neighborhoods—three residential developments in Thompson’s Station, a suburb of Nashville—correspond to the commercial realities of the telecommunication-services market, which exists ¡at least in Thompson’s Station if not in the larger geographic area around Nashville. Nor have Plaintiffs alleged facts showing that the telecommunication-services sales ■ in those three residential developments are economically significant in relation to the broader telecommunication-services market in Thompson’s Station or nearby Nashville. See Monument Builders, 524 F.3d at 736; see also Wampler v. Sw. Bell Tel. Co., 597 F.3d 741, 745 (5th Cir. 2010). Many cases illustrate this rule. For example, in Monument Builders, 524 F.3d at 737, we-rejected a tying claim because the plaintiffs’ definition of the relevant geographic market was too narrow. The Monument Builders plaintiffs alleged that the defendant cemeteries improperly required consumers to purchase a burial memorial from the cemeteries, once they had purchased a burial plot. We rejected the plaintiffs’ allegation that the relevant geographic market was “each individual cemetery,” id. at 734, because the “uniqueness of location is not in itself adequate.to establish market power,” id. at 733 (quoting Baxley-DeLamar Monuments, Inc. v. Am. Cemetery Ass’n, 938 F.2d 846, 852 (8th Cir. 1991)). Moreover, we found that such a definition improperly merged the geographic-market analysis and the product-market analysis into one determination and made proof of a substantial effect on the relevant market unnecessary, holding that: “There can be no competition for the sale of burial lots within a market that contains only one provider of burial lots. Market power under' these circumstances would be unavoidable.” Id. at 734-35; see also Brokerage Concepts, Inc. v. U.S. Healthcare, Inc., 140 F.3d 494, 515 (3d Cir. 1998) (finding that “non-contiguoüs, gerrymandered geographic market consisting solely of the areas surrounding- [certain] pharmacies in suburban' Philadelphia,” without reference to- a market perceived by consumers and suppliers, failed as' a matter of law (citing Tunis Bros. Co. v. Ford Motor Co., 952 F.2d 715, 727 (3d Cir. 1991))). In support of its holding, the Mormment Builders court relied on Apani Southwest, 300 F.3d at 626-27, which addressed a plaintiffs definition of a geographic market as twenty-seven. City-owned facilities in Lubbock, Texas, where Coca-Cola was the exclusive provider of nonalcoholic beverages. The Apcmi court characterized the plaintiffs allegations as an attempt “to artificially narrow a broader economic market” and rejected the tying claim because the alleged geographic market “did not correspond to the commercial realities of the industry and was not economically significant.” Id. at 633; see also Double D Spotting Serv., Inc. v. Supervalu, Inc., 136 F.3d 554, 560-61 (8th Cir. 1998) (rejecting the trucker plaintiffs’ allegation that the relevant geographic market for “unloading services” was “the Supervalu warehouse in Urbandale, Iowa, which is a suburb of Des Moines,” because the “stated geographic market is too narrow to support a claim of an antitrust violation”). Finally, in the more recent case of Wampler v. Southwest Bell Telephone Co., 597 F.3d 741 (5th Cir. 2010), the Fifth Circuit rejected a Sherman Act conspiracy claim in which the resident plaintiffs alleged that the relevant geographic market was a single multi-unit dwelling (“MDU”) where AT & T had exclusive access to the communications infrastructure entering the building. Id. at 743. The Wampler court held that an MDU was not a relevant geographic market, because “given the competition that exists between MDU owners, the competition that exists between service providers, and given the highly mobile nature of today’s society, ... a single MDU is [not] so segregated as to be economically significant and thus repre-sente 1 a plausible geographic market.” Id. at 746; cf. E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 444-47 (4th Cir. 2011) (finding sufficient Kolon’s allegation that “the relevant geographic market was ‘worldwide supply of para-aramid fiber to commercial purchasers in the United States,’” because Kolon “pled plausible reasons for limiting the geographic market to the United States”). Similarly, “the Neighborhood” is not a relevant geographic market for the tied product (telecommunication services) at issue here. Plaintiffs do not allege that “the Neighborhood” has any relationship to the commercial realities of the telecommunication-services industry or is economically significant in the telecommunication-services market. Plaintiffs, therefore, have failed to allege a relevant geographic market for the sale of telecommunication services, and their allegations are insufficient to make out a tying claim. For the foregoing reasons, I concur in part and dissent in part. . As an initial matter, the antitrust and exclusivity claims come to us, in part, as an appeal of a post-judgment motion to amend. “When a party seeks to amend a complaint after an adverse judgment, it thus must shoulder a heavier , burden. Instead of .meeting only the modest requirements of Rule 15, the claimant must meet the requirements for reopening a case established by Rules 59 or 60." Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv., 616 F.3d 612, 616 (6th Cir. 2010) (citations omitted). Because I would find that the district court did not err by dismissing Plaintiffs' antitrust and exclusivity claims, I would also find that the district court did not abuse its discretion by denying Plaintiffs’ motion to set aside judgment and amend the complaint. . The Tenth Circuit recently rejected a similar argument as "an outdated view of the law," while reviewing a Federal Rule of Civil Procedure 50(b) motion in In re: Cox Enterprises, Inc., 871 F.3d 1093, 1098 (10th Cir. 2017). Specifically, the Cox plaintiffs argued that "because Cox makes a substantial amount of money on [the tied product], the tie necessarily has the requisite potential for anticompeti-tive effects in the [tied] market.” Id. The Tenth Circuit ' disagreed, explaining that "making money from a tying arrangement doesn't violate § 1 of the Sherman Act unless the defendant, by doing so, has actually or potentially foreclosed or injured competition in the tied-product market.” Id. at 1106. “Because tying claims often present little or no potential to harm competition—and thus, no antitrust concerns—plaintiffs alleging per se unlawful tying arrangements must do more to meet the foreclosure element than' point to a dollar amount.” Id. at 1106-07 (citing Jefferson Parish Hosp. Dist. No. 2 v. Hyde, 466 U.S. 2, 15-16, 104 S.Ct. 1551, 80 L.Ed.2d 2 (1984)).