## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

June 3, 2020

No. 19-11194
Summary Calendar

Lyle W. Cayce
Clerk

PHONETERNET, L.L.C., doing business as Maestro,

Plaintiff–Appellant,

v.

LEXISNEXIS RISK SOLUTIONS, INCORPORATED; RELX,
INCORPORATED,

Defendants–Appellees.

Appeal from the United States District Court
for the Northern District of Texas
No. 3:18-CV-1719

Before OWEN, Chief Judge, and SOUTHWICK and WILLETT, Circuit Judges.

PER CURIAM:*

The case is about alleged inaccuracies in a business data report maintained by the defendant, LexisNexis Risk Solutions, Inc. (LexisNexis). The plaintiff, Phoneternet, L.L.C. (Phoneternet), argues that LexisNexis's failure to fix the errors promptly in LexisNexis's business data report caused Phoneternet to lose a lucrative business contract with the Lexus Division of

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 19-11194

Toyota Motor Corporation (Toyota). Phoneternet sued LexisNexis and its parent company, RELX, in state court. After removal and several rounds of amendments to the complaint, the district court dismissed Phoneternet's claims pursuant to Rule 12(b)(6). Phoneternet now appeals part of that dismissal. We affirm.

**I**

In early 2017, Phoneternet was in negotiations with Toyota to provide its personal assistant service, "MyStar," for use in Toyota's Lexus Division. According to Phoneternet, Toyota was prepared to sign a multimillion-dollar agreement for the service. "The only caveat before signing the agreement [was] whether [Phoneternet] had a clean business report as reviewed by Toyota's procurement department."

Toyota requested a business report on Phoneternet from LexisNexis. The report was not favorable to Phoneternet. Indeed, the report rated Phoneternet as being high risk. In June 2017, Toyota told Phoneternet that it "needed to address the business credit report[] in order to proceed with the . . . contract." Toyota asked Phoneternet to "reach back out" after it "worked out any potential changes" in the report.

Slightly more than one month later, Phoneternet sent a letter to LexisNexis "identifying and correcting fifteen . . . separate discrepancies and errors" in the report. In October 2017, Phoneternet received a letter from LexisNexis, stating that LexisNexis had "modified the data as requested." Phoneternet claims that this statement was false; LexisNexis had only changed one of the fifteen discrepancies Phoneternet had identified in its earlier letter. After receiving this letter from LexisNexis, Phoneternet started calling the LexisNexis Small Business Advocacy Center—at least three times a week—requesting that the information be corrected. According to Phoneternet, the LexisNexis customer service team as well as managers and

No. 19-11194

supervisors assured Phoneternet that the "information would be updated in the database." Phoneternet claims that it was told "more than once that the issue of Phoneternet's data had been passed upon by senior decision makers at LexisNexis and would be fixed promptly."

In early January 2018, Phoneternet sent a final letter to LexisNexis requesting that LexisNexis "rectify its mistakes." That next month, LexisNexis sent a letter to Phoneternet directed towards Phoneternet's managing director, with only one change made in the entire report. According to Phoneternet, LexisNexis "continued to stand by [its] data [even] after [Phoneternet's] multiple attempts" to have the data fixed. Indeed, Phoneternet claims that, as of January 2019, LexisNexis still had not made the requested changes to Phoneternet's business report.

Phoneternet sued LexisNexis and its parent company, RELX, asserting, among other things, causes of action for negligence, gross negligence, malice, tortious interference with prospective business relations, business disparagement, negligent misrepresentation, promissory estoppel, and negligent breach of special duty. After several amendments by Phoneternet, the district court dismissed all of Phoneternet's claims. Phoneternet appeals only the dismissal of its claims against LexisNexis for negligence, negligent misrepresentation, tortious interference with prospective business relations, and promissory estoppel. Phoneternet does not appeal the dismissal of any of its claims as they relate to LexisNexis's initial publication of the allegedly false report. Rather, Phoneternet only appeals its claims as they relate to LexisNexis's failure to correct the allegedly incorrect data. Phoneternet seeks both monetary damages and injunctive relief.

## II

Phoneternet presents four main arguments on appeal. First, Phoneternet argues that the district court erred in dismissing its claims for

No. 19-11194

negligent misrepresentation and promissory estoppel.  Second, Phoneternet argues that the district court erred in dismissing its negligence claim. Specifically, Phoneternet argues that the district court erred in concluding that there is no duty under Texas law requiring a business credit reporting agency to correct allegedly inaccurate business reports when the company that is the subject of the report has notified the agency of the alleged inaccuracies.  Third, Phoneternet argues that this court should certify the question of whether a duty exists under the circumstances outlined in its second argument to the Supreme Court of Texas.  Finally, Phoneternet argues that the district court erred in dismissing its claim for tortious interference with prospective business relations and in denying its request for injunctive relief.

## A

We turn first to Phoneternet's claims for negligent misrepresentation and promissory estoppel, reviewing the district court's dismissal of each claim de novo.[1]  The district court dismissed both claims after determining, among other things, that Phoneternet's "reliance on any statement by LexisNexis that it had or would correct certain alleged inaccuracies was not justified."  On appeal, Phoneternet argues that the district court mischaracterized its allegations and relied on an improper evidentiary standard in dismissing the claims.  After careful review, we conclude that the district court properly dismissed both claims.

Under Texas law, both negligent representation and promissory estoppel require "reasonable and justified" reliance by the plaintiff on a statement or representation made by the defendant.[2]  Here, Phoneternet alleges that it

---

[1] *See Budhathoki v. Nielson*, 898 F.3d 504, 507 (5th Cir. 2018) (citing *Wampler v. Sw. Bell Tel. Co.*, 597 F.3d 741, 744 (5th Cir. 2010)).

[2] *Ortiz v. Collins*, 203 S.W.3d 414, 421 (Tex. App.—Houston [14th Dist.] 2006, no pet.); *see Davis v. Tex. Farm Bureau Ins.*, 470 S.W.3d 97, 108 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (discussing how a promise, for purposes of a promissory estoppel claim, "must be

relied on LexisNexis's alleged statement that the data in the business report had been "modified . . . as requested" and LexisNexis's alleged statement that it would "correct the erroneous data promptly."

Phoneternet's subsequent actions and later communications with LexisNexis belie any claim that Phoneternet reasonably and justifiably relied on LexisNexis's statement that the alleged errors in Phoneternet's business report had been "modified . . . as requested." Shortly after LexisNexis's alleged statement that the errors in the report had been "modified . . . as requested," Phoneternet started calling LexisNexis requesting that the errors in the report be corrected. In fact, Phoneternet claims that it received several assurances from various LexisNexis personnel that the remaining errors would be corrected during these calls.

If Phoneternet believed the errors had already been corrected, there would have been no reason for Phoneternet to repeatedly call LexisNexis. In that case, Phoneternet would be asking LexisNexis to correct already accurate information. Moreover, to the extent Phoneternet did rely on LexisNexis's alleged statement that all fifteen errors in the report had been "modified . . . as requested," such reliance cannot be considered reasonable and justified. Given the alleged importance of this report—the only remaining obstacle between Phoneternet and a lucrative multimillion-dollar contract with Toyota—Phoneternet should have at least confirmed that the errors had been corrected before blindly relying on LexisNexis's representation. Further, it was unreasonable for Phoneternet to rely on LexisNexis's earlier

---

sufficiently specific and definite so that it would be reasonable and justified for the promisee to rely on it as a commitment to future action." (citing *Comiskey v. FH Partners, LLC*, 373 S.W.3d 620, 635 (Tex. App.—Houston [14th Dist.] 2012, pet. denied)); *Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 923 (Tex. 2010) (first citing *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001); and then citing *Fed. Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991)).

representation that the business report had been "modified . . . as requested," after the multiple calls to LexisNexis. According to Phoneternet, LexisNexis assured Phoneternet in these calls that the errors in the report would be corrected. At this point, Phoneternet should have known that LexisNexis had not modified all the alleged errors in the report as Phoneternet had earlier requested.

Nor could Phoneternet have reasonably and justifiably relied on LexisNexis's alleged promise that it would "correct the erroneous data promptly." Phoneternet claims that it relied on LexisNexis's assurances that the remaining errors in the business report would be fixed "promptly" by not "prepar[ing] an independent report" or "reparative presentation" for Toyota. But such reliance cannot be considered reasonable. First, it was unreasonable for Phoneternet to continue to rely on LexisNexis's alleged promises to fix the errors in the business report after months of alleged inaction by LexisNexis. Second, regardless of LexisNexis's continued assurances that the errors would be corrected, it was unreasonable for Phoneternet not to present an "independent report" or "reparative presentation" for Toyota. This is especially true comparing the relative cost of preparing such a report to the size of the alleged contract with Toyota—approximately six million dollars.

Thus, because Phoneternet did not reasonably and justifiably rely on either of LexisNexis's alleged representations, Phoneternet's claims for negligent misrepresentation and promissory estoppel both fail.[3]

## B

Phoneternet's second argument on appeal concerns its negligence claim. The district court dismissed that claim, concluding that "LexisNexis owed no

---

[3] *See* FED. R. CIV. P. 12(b)(6); *see also Ortiz*, 203 S.W.3d at 421 (noting that, under Texas law, "reasonable and justified" reliance is required for claims of both negligent misrepresentation and promissory estoppel).

No. 19-11194

duty under Texas law as urged by Phoneternet to promptly correct alleged inaccuracies in the business data maintained by LexisNexis upon Phoneternet's request." Phoneternet now argues that this court should recognize a common law duty under Texas law requiring a business credit reporting agency to correct allegedly false data in a commercial business report when the company that is the subject of the report has notified the agency of the alleged inaccuracy. Under the *Erie* doctrine, federal courts are required to follow state law and are generally prohibited from making new substantive state-law common law rules.[4] Thus, this court cannot recognize, as Phoneternet requests, a new common law duty under Texas law to correct allegedly false data in a commercial business report. For these reasons, we deny Phoneternet's request to recognize a new duty under Texas common law and affirm the district court's dismissal of Phoneternet's negligence claim.

## III

In its third argument on appeal, Phoneternet asks this court to certify the following question to the Supreme Court of Texas:

> Under Texas law, does a business credit reporting agency have a duty to correct erroneous business credit information when the business entity on which an erroneous report has been made has notified the agency of the errors (with proof) and requested correction?

"The decision of whether to certify a question lies within our sound discretion."[5] In this case, Phoneternet points to no cases that would make certification advisable.[6] Therefore, we decline Phoneternet's request.

---

[4] *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

[5] *In re Deepwater Horizon*, 807 F.3d 689, 698 (5th Cir. 2015) (quoting *Patterson v. Mobil Oil Corp.*, 335 F.3d 476, 487 (5th Cir. 2003)).

[6] *See Gibson v. Kilpatrick*, 838 F.3d 476, 488 (5th Cir. 2016).

7

No. 19-11194

## IV

Phoneternet's final argument on appeal concerns its claim for tortious interference with prospective business relations and its request for injunctive relief.    Under Texas law, tortious interference with prospective business relations requires a defendant's conduct to be independently tortious or unlawful.[7]  Similarly, to succeed on a request for injunctive relief, a plaintiff must show a substantial likelihood of success on the merits.[8]  As discussed above, in this case, Phoneternet has failed to allege adequately an independent tort or any other meritorious claim.    Thus, Phoneternet cannot meet the requirements for its tortious interference with prospective business relations claim or the requirements for its request for injunctive relief.  The district court did not err in dismissing Phoneternet's tortious interference claim or in denying Phoneternet's request for injunctive relief.

**\*      \*      \***

For these reasons, we AFFIRM the district court's judgment.

---

[7] *Coinmach Corp. v. Aspenwood Apt. Corp.*, 417 S.W.3d 909, 923 (Tex. 2013).

[8] *See, e.g., Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987); *Canal Auth. of the State of Fla. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974).